Gorham *v.* Gorham.

---

---

### GORHAM and others, committee, &c. *vs.* GORHAM.

Where a bill is filed by the committee of a lunatic, to set aside an act done by such lunatic, upon the ground of his incompetency, it is not *necessary* that the lunatic himself should be made a party; but he may be joined, as a party, with his committee.

In all other cases, the settled practice in England has always been, either to join the committee with the lunatic, in bringing suits in chancery for his benefit, or to file the bill in the name of the lunatic, by his committee. And where the lunatic is not made a party to the bill, or information, in his behalf, it is a good cause of demurrer. The same rules are applicable to suits brought in the courts of equity in this country, for the benefit of lunatics.

When it is said, by English writers, that idiots and lunatics must sue by their committees, it is not meant that the suit is to be brought by the committee in their own names merely describing themselves as the committee of the lunatic; but that the suit is to be brought in the name of the lunatic, stating that he sues by the committee of his estate, naming them, as in the case of an infant suing by his next friend; or that the suit should be prosecuted in the names of the lunatic, and of his committee.

Gorham *v.* Gorham.

A bill filed by the committee of a lunatic, in their own names, in which they only describe themselves as his committee, is a bill by the committee alone ; and is not the bill of the lunatic, by his committee. And a decree in favor of the complainants would not be a decree in favor of the lunatic.

A bill filed by a committee, in that manner, praying for a partition of lands and for an account and payment of rents and profits of the share of the land belonging to the lunatic, is defective in form. And if the objection that the lunatic is not made a party to the suit, with his committee, is set up by the defendant, as a special cause of demurrer, no part of the bill can be sustained.

The objection that the lunatic himself is not made a party complainant, in a suit brought by his committee in relation to personal estate, may be waived by the defendant's neglecting to set it up by demurrer or answer; and it cannot be raised merely by a general demurrer for want of equity.

The court of chancery, during the continuance of the lunacy, by statute, has the whole control of the personal estate and choses in action of the lunatic. And it can transfer the title to the same, by directing a sale by the committee; and it may direct the committee to release any right of action in relation thereto, as may be equitable and just. So that when a matter relating to the personal estate of the lunatic has been fairly litigated by the committee, in that court, and decided against them, the court may protect the defendant against a new suit, by the lunatic or his representatives, although the lunatic was not a formal party to the suit brought by his committee; by directing the committee to transfer the property which was in litigation, to the defendant, or to release him from any further claim on account thereof.

The question whether a suit can be commenced in the name of a committee of a lunatic, for the recovery of real estate, or to establish the title to the same, or whether a suit in partition can be instituted in the name of such committee without joining the lunatic as a party, is wholly unaffected by the act of 1845, authorizing committees to sue in their own names.

A lunatic is a necessary party to a bill, filed by his committee, for the partition of his real estate. For a decree in partition, upon a bill filed by the committee alone, and to which the lunatic is not a party, will not transfer the legal title to his undivided share of that portion of the premises which is set off to the defendant in severalty.

There is no statute, in this state, authorizing the committee of a lunatic, or of an habitual drunkard, to prosecute a suit for partition in their own names alone ; or authorizing another person to prosecute a partition suit against them without making the lunatic, or the habitual drunkard, who is an actual owner of an undivided part of the premises, a party to the suit. And the only way in which a legal partition can be made of the real estate of a lunatic, or an habitual drunkard, except by an agreement between the committee and the other tenants in common, with the concurrence of the court, is to make him an actual party to the suit for partition.

By making a lunatic, or an habitual drunkard, a party to a suit for partition, his legal title to that portion of the premises which may be set off to the adverse party, in severalty, will pass, without any conveyance, either from the lunatic, or the ha-

Gorham v. Gorham.

bitual drunkard, or from his committee; under the provisions of the revised stat
utes relative to the partition of lands.

The cases of *The Executors of Brasher* v. *Van Cortland,* (2 *John. Ch. Rep.* 212,
400,) and of *Beach* v. *Bradley,* (8 *Paige's Rep.* 146,) commented on and ex.
plained.

THIS was an appeal from a decretal order of the vice chan-
cellor of the seventh circuit. The complainants were the com-
mittee of the person and estate of an habitual drunkard. And
the bill in this cause was filed for the partition of lands, owned
by the drunkard and the defendant as tenants in common;
and also for an account and payment of the drunkard's share
of the rents and profits of the premises which the defendant
had received, including the drunkard's share of the wood and
timber which had been taken from the premises by the defen-
dant. The bill described the complainants as the committee
of the person and estate of the drunkard. But it did not pur-
port to be the bill of the drunkard himself, by his committee.
Nor was he joined with the committee as one of the complain-
ants therein. The defendant put in a general demurrer for
want of equity; but without stating as a ground of demurrer,
that the drunkard himself was not made a party, or making
any other specific objection to the form of the bill. The vice
chancellor overruled the demurrer. And from that decision
the defendant appealed.

*W. Porter, Jun.* for the appellant. The bill in this cause
is improperly filed in the name of the committee. The habit-
ual drunkard should be the complainant. The revised statutes
(2 *R. S.* 242, § 1, 2d ed.) declares who may be parties com-
plainants in partition suits. The 80th section of the same title,
(*Idem,* 253,) declares that the same rules as to parties shall
apply in chancery as at law. In a case of that kind, the in-
tention of the legislature was that the lunatic should be made
a party. (*Idem,* 256, §§ 96, 97, 98.) The complainants, as the
committee of the habitual drunkard, are mere bailiffs, or re-
ceivers, and have no personal or representative interest in the
drunkard's property; and should not be complainants in a case

Gorham *v.* Gorham.

like this. (*Shelf. on Lunacy*, 179, 180, 339, 395. 1 *Collinson on Lunacy*, 270. 1 *Cas. in Ch.* 112, 153. *Petre* v. *Shoemaker*, 24 *Wend.* 85. 3 *Salk.* 300. *Lane* v. *Schermerhorn*, 1 *Hill*, 97, 98. *Willis' Eq. Pl.* 5, *note* (*u*). 1 *Fonb. Eq.* 67 *and* 68, *note* (*n*). *Story's Eq. Pl.* 67, *note* 1.) The case of *Ortley* v. *Messere*, (7 *John. Ch. Rep.* 139,) is not hostile to this position, but falls within one of the exceptions mentioned by Fonblanque. The doctrine of Judge Story, (*Story's Eq. Pl.* 65, 67, 68,) as to committees filing bills in their own names, derives its principal strength from the case of *Ortley* v. *Messere;* which is aliter so far as the doctrine sought to be established by Judge Story is concerned, and it is in conflict with all previously adjudged cases. There seems to be no necessity for departing from the well established general principle, in equity, which limits parties to those persons who are interested in the proceeding, or whose names are necessary to a decree, by making the case of the committee of a lunatic, &c. an exception to the rule. Allowing such committees to file bills in their own names, as sole complainants, would be increasing the already too great discrepancy in the principles and proceedings which prevails between the courts of law and courts of equity; which should be avoided. But even if it would have been regular, under the permission and in the exercise of discretion of the court, for the committee to file this bill in their own names, such permission or direction surely should appear upon the face of the bill. Otherwise the complainants appear as naked agents; prosecuting in their own names, and having no statutory or judicial authority so to do.

The defendant is not liable to his co-tenant for the occupancy and enjoyment of all the premises, except where such occupancy has been under a lease from such co-tenant, or in defiance of his rights. This bill does not allege that there were any rents, issues or profits of the premises during the time the defendant is alleged to have occupied the premises; but simply that the defendant by himself or his tenants occupied and enjoyed all the premises, &c. Even had the bill alleged that there were rents and profits of the premises and that the defen-

Gorham *v.* Gorham.

dant had received them, this of itself would not lay a foundation for a suit here, for an account; without alleging that there was some obstacle to a recovery at law, or that there were mutual accounts. The charge in the bill that the defendant during the time of his occupying the premises, cut and sold wood and timber growing thereon, and received the pay therefor, amounts to a charge of waste; for which a bill in chancery cannot be filed. (*Winship* v. *Pitts*, 3 *Paige*, 259.) And the charge that the defendant cut and sold the wood and timber on the rail-road land, amounts to nothing more than a conversion by one tenant in common of the joint property; for which an action of trover is the proper remedy. When the statute creates a right and at the same time gives the remedy, that remedy must be pursued. (*Durant* v. *Supervisors of Albany*, 26 *Wend.* 89. 5 *John. Rep.* 175. 3 *Hill*, 41. 3 *Mass. Rep.* 307. 5 *Id.* 514.) The right of a tenant in common, or of a joint tenant to an account against his co-tenant, does not exist at common law, but was first given by the statute of Westminster, which statute has been re-enacted in our own statutes. (1 *R. S. 2d ed.* 741, § 9.) The only remedy there prescribed is by an action of account, or an action for money had and received. This court may decree an account as *incidental* to a decree for partition; for the reasons stated in *Winship* v. *Pitts*, (3 *Paige*, 259.) But the portion of the bill for partition failing, for want of proper parties, that portion relating to the account of the rents and profits and for the waste, must fail with it; it appearing that the complainant has a remedy at law for the rents and profits.

The jurisdiction of chancery in partition cases is statutory, and the statutory directions, especially as to parties, must be strictly followed. This bill, therefore, should be dismissed with costs, and proceedings *de novo* commenced, under the provisions of the revised statutes relative to the partition of lands

*F. G. Jewett*, for the respondents. The practice of the court in this state does not make it necessary that idiots, lunatics, or persons who are duly found incapable of conducting

Gorham *v.* Gorham.

their own affairs in consequence of habitual drunkenness, for whom a committee has been appointed, should be made parties with their committee, either as complainants or defendants, in any suit or proceeding affecting their estates; their committee as such may sue and be sued. This point is settled by adjudged cases in this court. (2 *John. Ch. Rep.* 242, 400. 7 *Id.* 139. 3 *Paige's Rep.* 470. 1 *Moulton's Pr.* 102.) Judge Story, in his Commentary on Equity and Pleadings, (*Story's Eq. Pl.* § 65,) says that in some of the states in America the courts of equity are entrusted with the authority to appoint committees for idiots and lunatics; and that in such cases the idiots and lunatics sue by their committees. "Thus, for example in New-York, by statute, the court of chancery has the care and custody of idiots and lunatics, and entire jurisdiction over the subject in all its general relations." The case of *Ortley and Baker, committee of Sperry, a lunatic,* v. *Messere and others,* (7 *John. Ch. Rep.* 139,) is full to show that a lunatic is not a necessary party, as a complainant, with his committee. The same objection was made in the case of *The Attorney General on behalf of Smith, a lunatic,* v. *Parkhurst,* (1 *Chancery Cas.* 112,) and was overruled. In another case, (*Kidder* v. *Kidder,* 1 *Equity Cas. Abr.* 279,) the bill was by the lunatic and his committee, to set aside a settlement made by him while a lunatic. And there was a demurrer because the lunatic was a party; but the demurrer was overruled. It should seem, as Chancellor Kent says, to be immaterial and but matter of form. The lunatic may be joined with the committee or omitted, according to the cases. (7 *John. Ch. R.* 140.) He says, "There was a distinction suggested in the case of *The Attorney General on behalf of Woolrich* v. *Woolrich,* (1 *Ch. Cas.* 153,) between the case of a bill to set aside an act done while the party was insane, and a bill to set aside an act done before he was a lunatic; but that distinction is not to be found in the two cases which have been cited. The general practice however is, to unite the lunatic with the committee, as was done in 2 *Vernon,* 678. But there does not appear to be any necessity for it; as the committee have the exclusive custody and con-

Gorham *v.* Gorham.

trol of the estate and right of the lunatic. The lunatic may be considered as a party by his committee, and like trustees of an insolvent debtor, the committee hold the estate in trust under the direction of the court." In the case of *Teal* v. *Woodworth*, (3 *Paige's Rep.* 470,) the chancellor cited the case of *Brasher's executors* v. *Van Cortland*, (2 *John. Ch. Rep.* 242,) with approbation.

Although the drunkard may be a proper party, it does not follow that he is a necessary party. And if not a necessary party, the demurrer is not well taken. For in all such cases it is at the election of the party to unite the lunatic or drunkard with his committee or not. (2 *Paige*, 278.) The statute has given the court of chancery exclusive jurisdiction over the estate of idiots, lunatics and habitual drunkards, except in a few cases when concurrent jurisdiction, in case of drunkards, is given to the court of common pleas. (1 *R. S. 2d ed.* 813. 3 *Paige*, 199.) This court therefore will not permit any action to be brought or sustained against a person whose estate is under the care and management of a committee; and if an action at law is brought for the recovery of a debt against such person, this court will restrain the proceeding by injunction, and will compel the party to come to this court for justice, by bill or petition. (2 *John. Ch. Rep.* 242. 3 *Paige*, 199.)

The general practice in England, is to unite the lunatic with his committee, as the complainants, in a suit affecting his estate. Although formerly it was a rule that the lunatic should not join with his committee in a suit, to be relieved against an act done during his lunacy. (2 *Barb. Ch. Prac.* 223. *Story's Eq. Pl.* 65, 66. *Hoff. Pr.* 61.) Mr. Barbour says, "Bills on behalf of a lunatic are usually instituted in the name of the lunatic; but as he is a person incapable in law of taking any steps on his own account, he sues by his committee." It will be seen on reference to the *Matter of Congdon*, (2 *Paige's Rep.* 566,) to which he refers, that it was an application by the general guardian of an infant tenant in common, by petition, praying for an order for leave to sell the infant's undivided share of lands to the adult owners of the other shares. And

Gorham *v.* Gorham.

Mr. Hoffman refers to the same English cases, to which Barbour refers, to show that lunatics generally sue by the committees of their estates. All these cases agree that it is not necessary to make a lunatic a party to a bill to avoid acts done by him while under mental incapacity. The bill may be filed by the committee alone; but if the lunatic is joined with his committee, it is not demurrable. It is as necessary, by the English chancery practice, that a lunatic should be made a party defendant with his committee, as it is that he should be made a party complainant with his committee. (*Story's Eq. Pl.* 70. *Mitford's Pl.* 103. 1 *Dick. Rep.* 233. *Cooper's Pl.* 31, 32.) But the practice of the court in this state does not require that the lunatic should be made a party, either complainant or defendant, with his committee, unless the committee of the lunatic has a personal interest in the controversy, and when such interest may or necessarily must conflict with that of the lunatic. In such cases the lunatic should be made a party; so that the court may assign him a guardian to appear and protect his rights as against the committee. (2 *John. Ch.* 242, 400. 7 *Id.* 139. 3 *Paige's Rep.* 470.)

THE CHANCELLOR. In some of the earlier decisions in the court of chancery, in England, it was settled that where a bill or information was filed to set aside an act done by a lunatic, upon the ground of his incompetency, it was not necessary that the lunatic himself should be made a party. The case of *Attorney General* v. *Parkhurst,* (1 *Ch. Ca.* 112,) which is one of the cases alluded to, was settled upon great consideration; being first decided by Mr. Justice Tirrell, sitting for the lord keeper, and afterwards affirmed, upon a rehearing, by Sir Orlando Bridgman, assisted by some of the judges. The decision was probably based upon the principle that the lunatic should not be compelled to stultify himself. And I am not aware that it has ever been overruled. It was therefore properly followed by Chancellor Kent, in the case of *Otley & Baker* v. *Messere,* (7 *John. Ch. Rep.* 139,) where a bill was filed by the committee of the lunatic to set aside acts done by the lunatic when he

was incompetent. It was not intended, however, in the case
of the *Attorney General* v. *Parkhurst*, to decide that the at-
torney general or the committee could file an information or a
bill for the benefit of a lunatic, in all cases, without joining the
lunatic himself as a party. For in the case of *Palmer, attor-
ney general*, v. *Woolrich*, (1 *Ch. Cas.* 153,) which was decided
the next year by the same lord keeper, Sir Orlando Bridgman,
he allowed a demurrer to a bill filed by the attorney general,
for the benefit of a lunatic, upon the ground that the lunatic
was not a party; the bill in that case not being brought for the
purpose of avoiding any act done by the lunatic after the loss of
his reason. And this decision was in conformity with the note
at the end of the report of the case of *Fuller* v. *Lance*, (1 *Ch.
Cas.* 19,) which was decided six years previous to that time.
In accordance with this decision, the bills in the cases of *Clark*
v. *Clark*, (2 *Vern.* 412,) and *Addison* v. *Dawson*, (*Idem*, 678,)
which came before the court in 1700, and 1711, appear to have
been filed in the name of the lunatic, by his committee; in the
same manner that an infant files a bill by his next friend. In
1729, the question came before Lord Chancellor King, in the
case of *Ridler* v. *Ridler*, (1 *Eq. Ca. Abr.* 279,) whether the lu-
natic was at liberty to join with his committee in a bill filed to
set aside a deed of settlement obtained from him after he be-
came a lunatic; the defendant having objected by demurrer
that it was against the maxim of law to permit a party to stul-
tify himself. And his lordship decided that the lunatic might be
a party to the bill, for that purpose, with the committee. The
result of these several decisions was, that where the object of
the bill was to set aside the act or deed of the lunatic upon the
ground of his mental incapacity at the time the act was done,
or the deed was executed, the bill might be filed by the com-
mittee, or the attorney general alone; or by joining the
lunatic with the committee, or with the attorney general when
there was no committee, or when the interest of the committee
was adverse to that of the lunatic. And the practice in Eng-
land, ever since that time, appears to have been either to join
the committee with the lunatic, in bringing suits for his bene-

Gorham v. Gorham.

fit, or to file the bill in the name of the lunatic, by his committee. Thus in a case before Lord Thurlow, in 1791, (2 *Dick. Rep.* 748,) where a bill was filed against the committee, by the attorney general in behalf of the lunatic, it appears to have been filed by him on the relation of the lunatic, and by the lunatic himself as an informant and plaintiff also. In the Practical Register it is also stated that lunatics must generally sue and answer by their committees; and if the lunatic is not named a party in the bill, or in an information by the attorney general, it is commonly a good cause of demurrer. But an exception is made in the case where the object of the suit is to relieve the lunatic against some act done by himself during the lunacy. (*Wyatt's P. R.* 272.) Lord Redesdale also says, idiots and lunatics sue by the committees of their estates; and where their interests clash with those of their committees, the attorney general files an information in their behalf; but in that case a proper relator must be named who will be responsible for the costs. In the unreported case, referred to by him to show that the attorney general is the proper person to institute a suit for one who has been found a lunatic and where no committee has been appointed, the information appears to have been filed by the attorney general on behalf of the lunatic Maria Lapine, on the relation of a third person; and the lunatic herself was also joined in the suit as a complainant. (*Mit. Pl. 4th Lond. ed.* 29.) And this was in conformity to the decision of Lord Keeper Bridgman in the case of *Palmer, attorney general,* v. *Woolrich,* before referred to, and the subsequent decisions of Sir Thomas Sewel and of Lord Northington, that some third person must be named as a relator who would be responsible for the defendant's costs if the suit was not sustained. (*See Attorney General* v. *Tyler,* 1 *Dick.* 378; 2 *Eden,* 230, *S. C.*) Cooper, Lubé, and Welford, in their several treatises on equity pleading, say, that idiots and lunatics must exhibit their bills by the committees of their estates; and the last mentioned writer says, where the committee sues for any thing, the committee as well as the lunatic is made, a party. (*Coop.* 31. *Lubé,* 22. *Welf.* 22.) And Willis gives the form of the com-

mencement of a bill where the committee and the lunatic both join as complainants, instead of filing a bill in the name of the lunatic by his committee. (*Willis' Eq. Pl.* 5.) Shelford also says, that idiots and lunatics must sue in courts of equity by the committees of their estates, and in such suits the committee as well as the lunatic should be parties; and if a lunatic is not named a party in a bill or information in his behalf, it is a good cause of demurrer. (*Shelf. on Lun.* 415. *See also Stock's Law of Non Com. Ment.* 33, *and Calv. on Parties,* 303.) The late Judge Story, after stating the principles of the English law on the subject, and the authority of the great seal to appoint committees of idiots and lunatics, lays down the same rules as applicable to courts of equity in this country. (*Story's Eq. Pl.* § 65.)

When it is said, by these writers, that idiots and lunatics must sue *by* their committees, it is not meant that the suit is to be brought by the committee in his own name, merely describing himself as the committee of the lunatic, as has been erroneously supposed by the court of one of our sister states. But they mean that the suit should be brought in the name of the lunatic, stating that he sues by the committee of his estate, naming them; as in the case of an infant suing by his next friend. Or that the suit should be prosecuted in the names of the lunatic and of his committee, as in the precedent in Willis' Pleadings, before referred to.

In the case under consideration, the bill is filed by the committee in their own names, and they only describe themselves as the committee of the habitual drunkard. This, therefore, is a bill by the committee alone; and is not the bill of the habitual drunkard by his committee. And a decree in favor of the complainants, in this suit, would not be a decree in favor of the habitual drunkard. (*See Southerland* v. *Goff,* 5 *Port. Alab. Rep.* 508.)

I think, therefore, the bill was defective in form, even as far as it sought an account and payment of rents and profits which had become a part of the habitual drunkard's personal estate, at the commencement of this suit. And if the objection that

Gorham *v.* Gorham.

he was not made a party to the suit with his committee, had been stated as a special cause of demurrer, I think the demurrer to the whole bill ought to have been sustained on that ground. But the statements in the bill as to the rights of the habitual drunkard, and the prayers for relief, except the general prayer, are in the proper form to enable the court to make a final decree for the payment of the habitual drunkard's share of the rents and profits of the premises to his committee, for his use and benefit; so as to protect the defendant from a second recovery for the same matter, in case the habitual drunkard should die or be restored to the possession and control of his property. For that reason, a general demurrer to the whole bill, for want of equity, was not well taken; as the objection was merely formal as to the part of the bill which sought for an account and payment of rents and profits. And the habitual drunkard, by his committee, had a right to file a bill in this court against the defendant, as his co-tenant in common, for such account and payment, independent of the claim for a partition of the premises.

The reason why the lunatic himself should be a party to a suit for the recovery of property claimed to belong to him is, that, in case the defendant should succeed in his defence, he may not be subjected to a second litigation for the same matter, by the lunatic, should he be restored to the possession and control of his property; or by the representatives of the lunatic after his death. For a suit prosecuted in the name of the committee alone, who are the mere bailiffs of the crown in England, and of the court of chancery in this state, would not estop the lunatic, or his legal representatives, from litigating the same matter over again, after his restoration to his reason, or upon his death. That is a right which the defendant may waive, by neglecting to make the objection by demurrer, or answer, that the lunatic himself is not made a party complainant in the suit.

Again; in this state the court of chancery, during the continuance of the lunacy, has, by the statute, the whole control of the personal estate and choses in action of the lunatic. And it can transfer the title to the same, by directing a sale by the

committee; and may direct the committee to release any right of action in relation thereto, as may be equitable and just. So that when a matter relating to the personal estate of the lunatic, has been fairly litigated by the committee in this court, and decided against them, the court may protect the defendant against a new suit, by the lunatic or his representatives, although the lunatic is not a formal party to the suit brought by his committee; by directing the committee to transfer the property which was in litigation, to the defendant, or to release the defendant from any further claim on account thereof. The objection of the non-joinder of the lunatic, as a party complainant, with his committee in such a suit, appears, therefore, to be a matter of form and not of substance. And it is not such an objection as can avail the defendant upon a general demurrer for want of equity only. For if the objection which is urged upon this appeal, had been stated in the demurrer, it might have been obviated by a slight amendment of the bill.·

An objection for want of necessary parties might have been made *ore tenus*, upon payment of the costs of the demurrer upon the record; but that does not appear to have been done in this case. And it is now wholly immaterial to the defendant whether the suit is prosecuted in the name of the habitual drunkard, by his committee, or by the committee of his estate in their own names only, so far as the rents and profits of the premises are concerned. For, since this appeal the legislature has authorized the committee of a lunatic or an habitual drunkard to sue in their own names, for any debt, claim, or demand, transferred to them, or to the possession and control of which they are entitled as such committee. (*Laws of* 1845, *pp.* 91, 92.) But the question whether a suit can be commenced in the name of the committee alone for the recovery of real estate, or to establish the title to the same, or whether a suit in partition can be instituted in the name of such committee, without joining the lunatic or habitual drunkard as a party, is wholly unaffected by the act of 1845. If the committee have no such right, the objection that the habitual drunkard is not made a party, is a matter of substance, in the

present case; so far as the bill seeks a partition of the real estate owned by him, and by the defendant, as tenants in common. And, upon a careful examination of the law, as it existed previous to the revolution, and the various statutory provisions on the subject of idiots, lunatics, &c. in this state, I am satisfied that a decree in partition, to which the habitual drunkard is not a party, will not transfer the legal title to his undivided share of that portion of the premises which may be set off to the defendant in severalty.

In England, the care and custody of idiots and lunatics and their estates, by the common law as well as by the statutes, (17 *Edw.* 2, *ch.* 9, 10,) belonged to the king as *parens patria*. (*Beverly's case*, 4 *Coke*, 127.) And the power of the crown in this respect was exercised by the keeper of the great seal, under special warrants from the crown from time to time, and did not belong to the court of chancery as such. But the statute 17th Edward 2, ch. 10, did not authorize the sale of the lands or tenements of a lunatic. On the contrary, it directed that the same should be safely kept, and not aliened. (1 *Evans' Stat.* 473. *Ex parte Dikes*, 8 *Ves. Rep.* 79.) In the case of a lunatic, therefore, the great seal, acting as the representative of the crown, under the sign manual, could only grant the care and custody of the lunatic and his estate during pleasure. And upon the restoration of the lunatic to his reason, he was entitled to have his lands restored to him with an unimpaired title. Or, if he died before the restoration of his reason, such lands went immediately to his heir, unaffected by any leases made in the meantime. Even in the case of idiots, although the king had a beneficial interest in the surplus rents and profits of the real estate, during the life of the idiot, beyond what was necessary for his support, the statute 17 Edward 2, ch. 9, did not allow the alienation of the estate beyond the life of the idiot; but expressly directed that after his death the estate should be surrendered to his heirs; so that they should not be disinherited. Such was the state of the English law in regard to the real estate of idiots and lunatics at the time of the settlement of this country; and it became a part of the

common law of the colony of New-York. Several statutes were subsequently passed in relation to the surrender and renewal of leases of the estates of lunatics, during the reigns of George the second and his successor. But if they were ever in force here, they were repealed, after the close of the revolution, by the general law on that subject.

Our statute of February, 1788, (2 *Greenl. Laws*, 25,) substituted the chancellor for the crown in relation to the persons and estates of idiots and lunatics; and expressly prohibited the alienation of the lands or tenements of either. In the revision of 1801 the language of the act was somewhat varied; for the committee was directed, in case the personal estate of the idiot or lunatic was not sufficient to pay his debts, or where such personal estate and the income of the real was not sufficient for his maintenance and that of his family, to apply to the chancellor, by petition, for a sale of so much of the real estate as should be necessary for that purpose. The chancellor was also authorized to decree a specific performance of contracts made by lunatics before their lunacy, and to authorize the committee of an idiot or lunatic to agree to a partition of lands held in common with other persons. But the sixth section of the revised act of March, 1801, (1 *R. L. of* 1813, *p.* 148,) expressly provided that the real estate of an idiot or lunatic should not be aliened or disposed of, otherwise than as directed by that act. The same provisions, in substance, are contained in the title of the revised statutes relative to the custody and disposition of the estates of idiots, lunatics, persons of unsound mind, and drunkards. (2 *R. S.* 52.) The twenty-third section of that title prohibits the leasing of the real estate for more than five years; and declares that it shall not be mortgaged, aliened, or disposed of, otherwise than as directed in that title.

It was under the revised act of 1801 that the case of *The Executors of Brasher* v. *Van Cortlandt*, (2 *John. Ch. Rep.* 242, 400,) arose and was decided by the late Chancellor Kent. When the case first came before him, I think he very correctly decided that it was not necessary to make the lunatic a party to a suit against his committee to compel them to sell his real

estate for the payment of the debt due from the lunatic to the complainant. The court had no power to decree a conveyance by the lunatic for that purpose, even if he was a party to the suit. Nor was there any statute, or any principle of the common law, which would have enabled the court to transfer the legal title of the lunatic's land, to a purchaser, merely by the deed of a master, executed in pursuance of a decree of the court. But the statute had made it the duty of the committee of the lunatic to apply to the court for a sale of the real estate for the payment of debts, where the personal estate was not sufficient for that purpose. The court, therefore, had the right, upon an application of a creditor, to compel the committee to comply with the provision of the statute, in that respect, by a summary proceeding in the matter of the lunacy. Or if the debt was unliquidated, or the right of the creditor was disputed, it might be a proper case to file a bill, by the permission of the court, for the purpose of settling the right to the debt, and to compel the committee to make the proper application, and obtain an order authorizing a sale, &c.; and in such a suit I do not see any valid ground of objection, on the part of the committee, that the lunatic himself was not made a party defendant. For the whole burthen of the defence of the suit must necessarily rest upon the committee, even if the lunatic himself was a party. And his presence as a party was not necessary to enable them to apply and obtain the authority of the court to sell and convey the property, in the manner authorized by the statute. The complainants, it is true, might have an interest in making the lunatic a party, so that the decree establishing their debt would be final and conclusive against him and his representatives, in case he should be restored to his reason, or should die before an actual sale of his property by the committee under the authority of the court. It was upon that ground that I decided, in the case of *Beach* v. *Bradley*, (8 *Paige's Rep.* 146,) that the lunatic might be a proper party, though not a necessary party, to such a bill filed against his committee. When the case of *The Executors of Brasher* v. *Van Cortlandt*, came the second time before Chancellor Kent, he, unquestionably, meant

to decide that the title of the lunatic to real estate might be sold and conveyed for the payment of his debts, without the presenting of a formal petition, by the committee, provided the other formalities required by the statute on the subject were substantially complied with. But, I . do not understand my learned predecessor as deciding, or even intimating an opinion, that there was any other way in which the legal title could be transferred to the purchaser, under the sale which he directed to be made, than· by a deed duly executed by the committee of the lunatic, pursuant to the provision of the statute making it their duty to sell and convey the real estate of the lunatic for the payment of his debts. How that case was ultimately disposed of does not appear ; as the decree for a sale required such sale .to be reported to the court, for further directions, before any conveyance should be made to the purchaser. Although the act of March, 1801, authorized the chancellor, in his discretion, to join one or more persons with the committee in making a sale for the payment of debts, &c. and the master was properly joined with ·the committee, I have great doubts whether the legal title to the property could be conveyed to a purchaser in any other manner than by a compliance with all the forms required by the statute. For the act itself expressly declared that the real estate should not be aliened or disposed of in any other way. And I think the decree in that case, the existence and validity of the debt having been ascertained, should have directed the committee to present a petition in the form prescribed by the statute ; and that, upon the granting of the prayer thereof, such committee, either in conjunction with the master or otherwise as the court might think proper to direct, should sell so much of the real estate of the lunatic as was necessary for the payment of the complainant's debt, including costs, and should execute a good and sufficient deed to the purchaser, and pay the complainant's demand out of the proceeds of the sale. And the court might have enforced a compliance with the directions of such a decree by attachment against the committee, or by removing tl em and appointing others in their place.

Gorham *v.* Gorham.

Here the committee of the habitual drunkard have no power to convey the real estate for the purpose of carrying into effect a decree of the court in a partition suit; though such committee, with the sanction of the court, may consent to a voluntary partition between the habitual drunkard and his co-tenant in common. Nor is there any statute authorizing the committee to prosecute a suit for partition in their names alone; or authorizing another person to prosecute a partition suit against them without making the habitual drunkard, who is the actual owner of an undivided part of the premises, a party to the suit. The only way, therefore, in which a legal partition can be made of the property of an idiot, or lunatic, or an habitual drunkard, except by an agreement between the committee and the other tenants in common, with the concurrence of the court, is to make him an actual party. In that case his legal title to the portion of the premises which may be set off to the adverse party in severalty, or which may be sold by the commissioners, or the master, under the decree, will pass, without any conveyance, either from the idiot or lunatic, or habitual drunkard, or from his committee, under the provisions of the revised statutes relative to the partition of lands. (2 *R. S.* 323, §§ 36, 37, *of 3d ed. Idem,* 327, §§ 65, 66. *Idem,* 330, § 92.)

As there was a general demurrer to the whole bill, without specifying any cause of demurrer to that part of the bill as to which the habitual drunkard would have been a mere formal party, it was proper to overrule the demurrer. It should have been overruled, however, without prejudice to the right of the defendant to insist, by his answer, that the habitual drunkard should have been made a complainant, with his committee, so far as the bill sought a partition of the premises; and with liberty to the complainants to amend their bill by inserting his name as one of the complainants therein. The order appealed from must be modified accordingly. And neither party is to have costs as against the other upon this appeal.