Mr. Chief Justice Watkins delivered the opinion of the Court. This was a petition to the circuit court of Phillips county, under section 32, of the Digest, title Wills and Testaments, to establish a will which had been rejected by the court of probate. We propose to notice only so much of the proceedings, which are voluminous, as may be necessary to present fairly the various objections taken and urged on behalf of the plaintiff in error. The petitioner, Diamond, alleged that, on the 24th of April, 1848, Dennis Griffin made and published his last will and testament, which was exhibited, whereby he and one Boiling were appointed executors, and that Bolling had refused to qualify. That upon the decease of Griffin, the petitioner had presented the will to the probate court of Phillips county, to be proved and established as such, in accordance with the statute. That the probate was opposed by Rogers acting for himself andhis minor children; and, upon such opposition, the probate court decided that, at the time of its execution, Griffin was not of sound and disposing mind, and so rejected it. That said Rogers thereupon presented to that court for probate, the will of said Griffin, made and published on the 7th day of May, 1843, which was established by the court of probate as the will of the testator. Copies of the will of 1843, the order establishing it, and the order rejecting the will of 1848, were exhibited with the petition. The prayer of the petition was, that the court would direct an issue to try the validity of the will of 1848, and, if found in favor of that will, the court .of probate be directed to admit it for probate and record, and to reject and hold for nought, the will of 1843, which it had established and admitted to record. The answer of Rogers, for himself and his minor children, who were defendants to the petition, admitted that Diamond, the executor, named in the will of 1848, had presented it to the probate court, and by tbe decision of that court, the probate of it had been rejected, as stated by the petitioner. The respondents averred that such paper purporting to be the will of 1848, was not the last will and testament of said Griffin, as alleged in the petition; but that the paper described therein, purporting to be the will of said Griffin, made in 1843, and which had been established as such in the probate court, was, and is, his last will and testament. The circuit court directed the''issue whether the writing bearing date the 24th of April, 1848, purporting to be the last will and testament of Dennis Griffin, deceased, is or is not the last will and testament of said Griffin. Upon the trial of this issue, the jury found the writing dated the 24th of April, 1848, to be the last will and testament of the deceased, and so it was adjudged by the court, in pursuance of the verdict. It was further ordered, by the court, that said will, together with the depositions of the attesting witnesses thereto, be sent and delivered to the probate court, there to be probated and recorded in accordance with the finding of the jury, as and for the last will and testament of Dennis Griffin, deceased, together with a transcript of the verdict and judgment in that behalf. The defendant, Rogers, filed his motion for new trial, to the overruling of which he excepted, setting out the evidence and instructions, and showing the various grounds of exception, taken by him during the progress of the trial. These exceptions are now to be considered. On the trial, the respondant, Rogers, for himself and his co-defendants, claimed the right to open and conclude the cause to the jury, because the affirmative of the issue was upon them in support of the will of 1843, and proposed to read in evidence the will of 1843, the proofs taken in the probate court to establish it, and the order of that court admitting it to probate; which the court would not permit, holding the affirmative of the issue to be upon Diamond, the petitioner. In this, it is clear, the circuit court decided correctly. (1 Greenl. Ev., p. 89, sec. 77.) The test, as to who should begin, is to consider which party, upon the state of the pleadings, would be entitled to the verdict in the event of no evidence being given on either side. In such case, the party against whom the judgment would be given, must take the affirmative, and is entitled to begin. See the case of Lete vs. The Grisham Life Ins. Co., in Exchequer, (7 Eng. Com. Law & Eq. 580.) The general issue or a special traverse puts the burthen of proof on the plaintiff: if the plea confesses and avoids, the plaintiff will have a verdict on the confession, unless the defendant proves the matter set up in avoidance. On this principle, it was held in Pope vs. Latham, (1 Ark. 66,) that the defendant must prove a special non est factum, if the plea admits that he had in fact executed the instrument sued on. So in Finley vs. Woodruff, (3 Eng. 328,) the court looking to the substance rather than the form of the pleas, held that the burthen of proof was rightly imposed, on the defendant whose duty it was to show a performance of his convenant. In this case, the object of the petition was to establish the will of 1848, which the probate court had rejected. This, as well as tire decision in favor of the will of 1843, by the court of probate, being admitted, both adjudications would have to stand as conclusive until overthrown by the trial anew in the probate court. The issue was upon the validity of the will of 1848, and though its determination might draw in question any prior or subsequent will that may have been made by the deceased, the verdict must have been given against the petitioner, in case no evidence had been offered, and the burthen of proof being upon him, he had the right to open and conclude. The petitioner then read in evidence, in support of the will of 1848, the depositions of Dr. Shelby, H. Wilson, and C. A. Stewart, Esq., the attesting witnesses, together with the original will. The defendants objected to the reading of the answer of Wilson to the second interrogatory, because it was leading. The witness had answered affirmatively the first question, whether he was one of the subscribing witnesses to the paper then shown him, purporting to be the last will and testament of Dennis Griffin. The second question was, “ Did you subscribe said will in the presence, and at the request, of said Griffin?” This question, pointing to a fact not merely introductory, but material to the issue, and suggestive of the answer desired to be given, is a leading interrogatory, according to the decision in Clark vs. Moss, (6 Eng. 740.) Yet the refusal of the court, in this case, to exclude the answer to it, is no good ground for new trial, though if the defendants had rested on their exceptions without moving for new trial, the error might perhaps require a reversal. Because this court will review errors of law, presented in the shape of a motion for new trial, it does not follow that the motion is deprived of its peculiar feature at the common law an application addressed to the sound equitable discretion of the court below. If therefore rejecting the answer to this question, there was enough' testimony to sustain the verdict, it will not be disturbed. Under our statutory practice of taking depositions, if taken in the form of a statement and not upon interrogatories, and when the opposite party neglects to attend though notified, we are fully sensible of the abuses liable to result from it. Here, the opposite party was in attendance, and the deponent was fully cross-examined. There is nothing in the answer, or in the entire deposition of the witness from which unfairness could be inferred; and besides the other testimony in the case, this witness, in subsequent portions of his testimony not objected to, in a great measure supplies the place of the answer objected to. It does not appear that the defendants objected to the question at the time of taking the deposition before the magistrate, and we do not say they were bound to do so; admitting that a party calling a witness puts a leading question at his peril, and that the objection may be sprung upon him after the jury are sworn, yet it might, in the discretion of the court, and where important rights depend on it, be ground of new trial for surprise. When the petitioner had closed his testimony, the defendants again proposed to read the will of 1843, the proof taken down before the probate court in support of it, and the order of that court admitting it to probate; also the depositions of Eli T. Diamond (the petitioner here) and H, H. Bolling, adduced by Rogers on the trial in the probate court in opposition to the will of 1848. It appears from the bill of exceptions that the petitioner objected to the reading of his own deposition and that of Bolling, and the court below sustained the objection. The court properly refused to permit these depositions to be read. The proceeding in the circuit court, under the statute, to have a will established or rejected, which had been rejected or established by the probate court, is not an appeal from that court, but is an independent proceeding, which does not suspend the decision of the probate court, or impair the execution of the will or the due course of administration pursuant to its decision, until such time as the adverse judgment of the circuit court is rendered — in this respect retaining the practice under the territorial law. The statute however does provide {sec. 3.5) that “ in all trials respecting the validity of any will, if any subscribing witness be deceased, or cannot be found, the oath of such witness examined at the time of probate, shall be admitted in evidence, and have such weight as the jury think it deserves.” Neither Diamond or Bolling were witnesses to the will of 1843, nor were their depositions taken to support it in the probate court, and there was no pretence for their introduction in the circuit court. It appears, from the record entry, that the court refused, on the objection of the plaintiff, to permit the will of 1843, the evidence in support of it in the probate court, and the order admitting it to probate, to be read in evidence. Such a statement in the record entry is quite unusual and unnecessary. The bill of exceptions designed by law to make a part of the record all such matters as would not otherwise appear of record, shows no such objection on the part of the plaintiff and no such ruling of the court. The probate of the will of 1843, and the order establishing if, were foreign to this issue, but the will itself was admissible in aid of other testimony, so far as it conduced to show by its provisions an unreasonable or unaccountable change in the intentions of the testator. In Lyon vs. Evans, (1 Ark. 360,) the statement in the entry of record was held to prevail over a contradictory one in the bill of exceptions, for the reasons there stated, and the further reason that there the bill of exceptions undertook to state the pleadings in the progress of the cause, which should properly appear of record: here the record is made to assume the office of a bill of exceptions in stating what evidence was offered or rejected. Moreover, the offer was entire, and the court was not bound to separate it, and admit a part and reject a part. Besides, the plaintiff, in his petition, exhibited the will of 1843, and the order establishing it. The due execution of that will is no where contested; but only this, that if the will of 1848 be established, the prior will is revoked. So that, in any view, this exception cannot be sustained. The defendants asked various instructions, which need only to be noticed so far as refused or modified by the court against their objection. The 15tH instruction moved was to the effect that, undue influence exerted over the testator before and at the time of the execution of the will of 1848, would avoid it — which the court modified by adding that a will induced by fair argument or kind offices, may be valid. Doubtless the modification and the instruction are equally good law, but the undue influence is imagined by the instruction. The instruction might well have been refused, because there was nothing in the testimony on which to predicate it. The 17th instruction was, in substance, that the testimony of both the subscribing witnesses to the will of 1848, having been adduced in support of it, its due and legal execution must be clearly proved by their testimony, and the jury can infer no matter material to its due execution; to which the court added, “except from their testimony.” The law regards the testimony of the subscribing witnesses to a will as the best evidence, but if the instruction meant that it was the only evidence, or that a will could not be established without and even against their testimony, the giving of such a charge, so far as it could- affect the case, was an error in favor of the defendants. The 18th instruction, that every will which does not provide for the payment of debts, is yoid as a will, was properly refused. The will of 1848 does expressly make such provision, and if it did not, the law would imply it. The court was asked to charge the jury, as part of the 4th instruction, that the testator, at the time of making such subscription or acknowledgment, must declare the instrument so subscribed to be his last will and testament; which the court gave, with the addition that the word declare, as here used, means to signify distinctly, to make known, to assert to others and'to show forth, and in this manner, either by words or acts, in writing or by signs, to declare to a witness that the instrument subscribed was the testator’s will, must mean to make it at the time distinctly known to the witness by some assertion or by clear assent in words or signs. The 10th instruction asked for was, in effect, that each of the attesting witnesses must prove that both signed at the request of the testator, else the will stands as but with one attesting witness : which the court modified by adding that such request might be by words, acts or signs, if distinctly made by the testator, to each of the subscribing witnesses at the time of their becoming so. The court also charged that it must be proven that each of the attesting witnesses signed the will as such in the presence of the testator, and in the presence of each other. The attesting clause to the will states that it was “signed, sealed, published, and declared by Dennis Griffin, the above named testator, as and for his last will and testament, in the presence of us, who, at his request and in his presence, and in the presence of each other, have subscribed our names as witnesses thereto.” Dr. Wilson, one of the attesting witnesses, testifies that he signed the will as a witness in the presence of Griffin, who saw him affix his signature to it. That he saw Griffin subscribe the will before witness signed it. That he also attested the will in the presence of Stewart, the other subscribing witness. He does not recollect who requested him to sign it— whether Griffin or some other person. He was sent for to go to Griffin’s room for that purpose. That the will was read over to Griffin before he signed it, and Griffin said lie was satisfied with its provisions. That the will was read by Stewart, setting at the bedside of the testator. Mr. Stewart, the attorney who drew the will, testifies that he was requested by Griffin to draw his will for him. That Griffin, lying in bed, gave him in detail the disposition he wanted to make of his property, and he took down in pencil the skeleton of his will, then went to his office, wrote it in form, and presented it to him the next morning, being the same paper annexed to the commission. That he stood out some three or four feet from the bed, and read distinctly and slowly to the testator the whole contents of the will, who seemed satisfied with the disposition it made of the property mentioned in it. He then signed and sealed it in the presence of Dr. Wilson and witness, and'they then subscribed it in the presence of the testator, at his request, and. in the presence of each other. That', when he presented the will to-the testator for execution, he made some suggestion to him as to ■ a supposed difficulty in carrying out its provisions, to which Griffin replied that he hoped they would all be carried out. That he saw Griffin a day or two afterwards, at which time he spoke of the will, seemed perfectly satisfied with its contents, and paid witness for writing it. Upon this testimony, it is-not matter of surprise that the jury found in favor of the due execution of the will ; but the instructions given by the court require to be noticed; more especially as this is the first case coming to this court involving the construction of our statute of wills. Previous to the Revised Statutes of 1839, the law in force (Steele & McCamp. Dig. 557) required the will to be signed by the testator, or some other person in his presence and by his direction, and attested by two or more competent witnesses, subscribing their names to such will, in the presence of each other, and in the presence of the testator. The Revised Statutes of 1839 require every last will and testament to be executed and attested in the following manner: 1st. It must be subscribed by the testator, at the end of the will, or by some person for him at his request: 2d. Such subscription shall be made by the testator in the presence of each. of. the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses : 3d. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament: 4th. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator. The words italicized indicate the changes made by the present law; and the importance of those changes regulating the right of testamentary disposition, of all the estates in the country real and personal, is readily suggested. It is part of the history of the Revised Statutes of Ball & Roane, that many of the leading titles are taken from the New York Revised Statutes of 1830, of which the provision above quoted respecting wills, is a literal copy. Without questioning the wisdom or propriety of this statute, it is earnestly to be hoped that when its meaning shall have been settled by judicial construction, no sudden or arbitrary change will be made in so important a law of property. The New York statute dispenses with the necessity of the will being attested in the presence of the testator, doing away, as Chancellor Kent (4 Com. 515) thinks, wisely, with the doctrine of constuctive presence, which has been such a fruitful source of discussion in the courts of England, and some of the States of this country. (See Neill vs. Neill, 1 Leigh 6.) It is clear that so much of the charge given in this case, as required proof that the attesting witnesses signed the will in the presence of the testator, is not warranted by the statute. True, section 19 of the same chapter, provides that the probate court, on presentation of the will, may issue a commission annexed to the will, so as to have taken and certified the attestation of any witness to it, who is unable to attend from sickness, or who resides out of the State, or more than sixty miles from the place where the will is to be proven; and section 20 provides that if the witness appears before the commissioner, and makes oath that the testator signed the writing annexed to the commission, as his last wall and testament, or that some other person signed it by his direction, that he was of sound mind, that the witness subscribed his name thereto, in the presence of such testator, and at his request, the testimony so taken shall have the same force and effect, as if taken before the court, &c. These incongruous sections, which altogether omit proof of publication, are taken from section 9, title Wills and Testaments, of Steele & McCamp. Digest, which was silent as to publication. If those sections can have any effect at all, as part of the Revised Code, they must be construed as applying only to the deposition of the witness, and what statements it must contain, where his personal attendance cannot be had before the court of probate. So we think the statute does not require a simultaneous attestation, or that the witnesses should subscribe, in the presence of each other, though no doubt, such is the most prudent course. This feature in our statute, even without the provision for acknowledgment, as well as signing before the witnesses, does not differ materially from the English statute of 29 Ch. 2, in the construction of which it was settled by a long series of adjudications (collected in 1 Jarman on Wills Ed. 1845, p. 71,) that not only an acknowledgment would suffice, but that it might be made before each witness separately, and need not take place in the simultaneous presence of all. So the testator might sign before one and acknowledge before another of the witnesses. And we are satisfied of the correctness of the qualification given to the 10th instruction, that each of the attesting witnesses must sign his name as a witness, at the request of the testator, but such request might be inferred from the attendant circumstances in proof by signs or gestures as well as words: as in Rutherford vs. Rutherford, (1 Denio 33,) by the testator desiring the witness to be sent for to attest the execution of his will, or from a request made to such witness by another person in the testator’s presence. If there be any evidence from which the jury might infer a request, that as a question of fact ought to be submitted to them. But the court erred in favor of the plaintiff in error, in charging that each witness must prove that both signed at the request of the testator. Obviously, where the testator subscribes or acknowledge Ms subscription before the witnesses separately, and tbeir attestation is, at different times, so that each witness can only testify as to his own share in the transaction, each must prove the perfect execution of the will. But wherever the witnesses attest together, it seems to be well settled that it is sufficient if one witness be able to prove that all the requirements of the statute were complied with. So a part may be proved by one and part by the other. .Else the validity of the will would depend, not on a compliance with the statute, but on the good memory of the witnesses. See Jackson vs. Vickory, 1 Wend. 412. Dewey vs. Dewey, 1 Metc. 34. Jauncy vs. Thorne, 3 Barb. Ch. 41. But the question is presented whether the court erred in modifying the 4th instruction, as to what constitutes due publication of a will. ¡It appears from the opinion of the chancellor in Brinkerhoff vs. Remson, (8 Paige 498,) that the explicit provision of their statute, that the testator, at the time of subscribing or acknowledging, shall declare the instrument so subscribed to be his will and testament, was inserted .by the legislature against the judgment of the revisors, who had reported the section without it, and intentionally to change the law. Whether our General Assembly adopted it with like deliberation, we have no means of knowing. It is remarkable that -the English statute of 1837, quoted in 1 Jarman on Wills 98, was designed to dispense with publication, which had so long been a vexed question. It appears the New York statute of 1830, intended to settle the question the other way, by requiring publication, but it was left for the courts to settle what constituted publication. Perhaps the weight of authority in England was that no formal publication was required, or rather amounted to this, as said by Judge Rowan, in Ray vs. Walton, (2 A. K. Marsh. 71,) that the publication consisted in the execution of the will according-to the forms and solemnities prescribed by the statute, and which were designed to ensure publicity. And; therefore, the first impression of the New York statute was that it required something more than publication, as understood of the statute of 29 Chas. 2, and meant a formal declaration or act of publication, distinct from the other requisites of a valid will. If such, was the intention of the sta-> tute, the decisions in that State have virtually explained it away. See Heyer vs. Burger, 1 Hoffman's Chy. 19. Brinkerhoff vs. Remson, 8 Paige 489. Remson vs. Brinkerhoff, 26 Wend. 325. Chaffee vs. Baptist, M.C. 10 Paige 87. Grant vs. Grant, 1 Sandford Chy. R. 235. Rutherford vs. Rutherford, 1 Denio 33. Butler vs. Benson, 1 Barb. Sup. Ch. R. 527. Seguire vs. Seguire, 2 ib. 385. Nelson vs. McGiffart, 3 Barb. Ch. R. 159. It is believed that if the statute were to receive a strict, instead of liberal construction, but few wills could be sustained. Many persons, from various and sometimes peculiar motives, are averse to have the contents of their will known even to witnesses of their own selection, and would seek to evade the whole policy of the statute of wills, by gifts mortis causa, and secret conveyances to operate as wills in disguise. The policy of the statute is to guard against frauds in the execution of wills, so often made under circumstances when the testator is liable to be imposed upon, or unduly influenced. Publication under the statute is necessary to give effect to a will; but it means that the testator, having capacity to make a will, shall understand that the instrument which he is about to execute, is a testamentary disposition of his property, and that he shall, at the time, communicate to the witnesses, that he does so understand it. The statute says he shall declare it; but in Remson vs. Brinkerhoff, Nelson, C.J., said that no particular form of words is necessary, and that it would be unwise, if not unsafe, to speculate upon the precise mode of communication, as every case must depend upon its own peculiar circumstances. The fact of publication, therefore, is to be inferred or not, from all the circumstances attending the execution of the will; all that is said and done as part of the res gestee. Here we are satisfied, upon the motion for new trial, that the jury were authorized to find the due publication of the will, from the fact that it was read over to- the testator in the presence of the witnesses, and that he then nroceeded to execute it — or that he conversed on the subject of the will presented to him, and at the same interview, in their presence, and alluding to any provision in it, hoped it would be carried out; or that the attestation clause alone was read over in their presence at the time of the execution, that clause stating that he declared it to be his last will and testament, that circumstance being (as said by Veep-lank, senator, in Remson vs. Brinkerhoff,) on his part, a silent but clear declaration. Whether in the case of a will so recent, the fact of due publication might be inferred as a presumption that all things were rightly acted, the attestation clause, though not necessarily a part of the will, being full, and in the absence of any proof to rebut such presumption, we need not express any opinion. On the question of testamentary capacity, we entertain no doubt. Apart from the other witnesses introduced in support of the will, the testimony of the attesting witnesses is full and conclusive, both as to facts and opinions founded upon them, and the testimony of Boiling and Piatt, the principal witnesses against the will, goes far to establish it. Such is our conclusion, after a careful examination of the testimony, and with reference to the adjudged cases. We deem it unnecessary to go over all the testimony on this subject as no principle of law is to be deduced from it, of interest beyond the particular case. The jury having found in favor of the testamentary capacity, and under instructions on that point, given at the instance of the plaintiffs in error, and altogether favorable to them, the motion for new trial presents no question of law, because, conceding that there is a conflict of testimony, we cannot, for that cause alone, disturb the verdict. By the will of 1848, the testator liberates one of his negro women and her four children, and bequeaths to them the entire proceeds of what appears to be a large estate, including a number of slaves, to be managed by his executor for six years, when all the property is to be sold, and the negroes manumitted, removed by the executor to some free State. No question is made as to the validity of this will under our statute of emancipation, and if the frequency of such wills should become an evil, it is for the legislature to consider what amendment of the statute is needed, to remedy it. The judgment of the circuit court is affirmed.