### EDWARD M. LOMBARD *vs.* LUCY A. MORSE.

Hampden.    September 22, 1891. — December 10, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Guardian and Ward — Insane Person — Husband and Wife — Fraud.*

A guardian has no title or interest in his ward's estate, and cannot maintain a bill in equity in his own name to avoid a conveyance or transfer by the ward of his property.

A bill in equity, brought in his own name by the guardian of an insane person, will not lie to avoid transfers of property fraudulently procured from the ward while he was not of sufficient mental capacity to bind himself by such transfers, but must be brought in the name of the ward; and the rule against self-stultification does not apply.

A husband may sue his wife in equity during coverture to try the question whether certain property, conveyed by the husband to the wife through the alleged fraud of the latter before the marriage, and sought to be recovered by him, is the separate property of the wife, or belongs to the husband, and ought to be restored to him.

BILL IN EQUITY, filed in the Superior Court on January 17, 1891, by "Edward M. Lombard, guardian of Pelatiah Ely," against "Lucy A. Morse, alias Lucy A. Ely," alleging that on July 5, 1889, Pelatiah conveyed by a deed duly recorded certain real estate owned by him to the defendant; that "on the next day a pretended marriage was had and solemnized between said Pelatiah and said Lucy A., and no decree has been made in legal process instituted to test the validity of such marriage"; that at or about the same time he transferred to her certain savings bank deposits made by him and believed to amount to nearly $2,000; that at the time when the conveyance and transfer were made by him, and the marriage above alluded to was solemnized, Pelatiah was an insane person, and was then eighty-three years of age; that within a month his first wife, with whom he had lived for about forty years, had died, and the defendant, with whom he had had no previous acquaintance and who was his former wife's nurse, after her death had become his housekeeper; that by reason of his age, affliction, and previous illness, he was mentally incapable of understanding the nature or legal consequences of his acts; that the defendant fraudulently took

advantage of his incapacity, and of her position of trust as house-keeper, and procured from him such conveyance and transfer by the exercise of undue and improper influence over him, and by deception and fraud; and that the defendant had entered into possession of the real estate so conveyed to her, and claimed an absolute title thereto. The bill prayed that the deed to the defendant might be set aside, and she be ordered to account for all sums of money transferred to her by the plaintiff's ward, and to pay them over for his benefit; and that she be enjoined from disposing of the same, and for further relief.

At the hearing, before *Mason*, C. J., before the introduction of any testimony, the defendant asked the judge to rule that, even if all the allegations of the bill were sustained, the bill could not be maintained in the name of the guardian. The judge so ruled, and reported the case for the determination of this court.

*G. M. Stearns & J. Bliss*, for the plaintiff.

*G. D. Robinson & W. Robinson*, for the defendant.

BARKER, J. The defendant is the wife of the plaintiff's ward. The bill alleges that, while the ward was insane and incapable of making transfers of property, on the day before the marriage, the defendant fraudulently procured conveyances and transfers of all his property to herself.

The question raised is whether the bill to avoid these conveyances and transfers can be maintained by the guardian in his own name. There is no allegation that he had made expenditures or incurred obligations expecting to be reimbursed out of the property.

The title to the property of the ward does not pass to the guardian. He has its care and management only. His position is that of an agent or attorney, not that of an assignee or trustee. Pub. Sts. c. 139, §§ 4, 11, 30. He is to "appear for and represent his ward in all legal suits and proceedings, unless another person is appointed for that purpose as guardian *ad litem* or next friend." Pub. Sts. c. 139, § 29.

The general rule that the ward is to be made the party in suits which concern his title is clear and well settled. *Brown* v. *Chase*, 4 Mass. 436. *Granby* v. *Amherst*, 7 Mass. 1. *Winslow* v. *Winslow*, 7 Mass. 96. *Somes* v. *Skinner*, 16 Mass. 348. *Man-*

*son* v. *Felton,* 13 Pick. 206, 211. *Hicks* v. *Chapman,* 10 Allen, 463. *Chandler* v. *Simmons,* 97 Mass. 508. *Jennings* v. *Collins,* 99 Mass. 29. *French* v. *Marshall,* 136 Mass. 564. *Myer* v. *Tighe,* 151 Mass. 354. With the exception of the cases of *Warfield* v. *Fisk,* 136 Mass. 219, and *Richmond* v. *Adams National Bank,* 152 Mass. 359, there has come to our attention no instance of such an action in our courts in the name of the guardian. In the former case the point was not raised or open, and in the latter, as there were other grounds for dismissing the bill, the court expressly declined to consider how far, if at all, the exception, which the plaintiff claimed to authorize the bringing of the bill in his own name, prevailed in this Commonwealth.

The precedents favoring such an exception are found in England and in New York, where committees are appointed for persons of unsound mind, and are founded in part upon the doctrine that the committee acquires some right in the ward's estate, and in part upon the ancient theory that no man can be heard to stultify himself. 1 Dan. Ch. Pract. (5th ed.) 9, 83. Story, Eq. Pl. §§ 64, 65. *Ortley* v. *Messere,* 7 Johns. Ch. 139. *Gorham* v. *Gorham,* 3 Barb. Ch. 24.

We have seen that here the guardian has no title or interest in the ward's estate. Both in England and New York the lunatic may be joined with his committee, the rule against self-stultification being held inapplicable to acts done to the prejudice of one's self. *Ridler* v. *Ridler,* 1 Eq. Cas. Abr. 279, pl. 5. *Gorham* v. *Gorham,* 3 Barb. Ch. 24. In *Lang* v. *Whidden,* 2 N. H. 435, the reasons for the rule itself were declared to be so " exceedingly quaint and sophistical " as to make it unnecessary to examine their fallacy, and it was held that an action at law may be brought by an insane person in his own name to avoid his deed.

In *Somes* v. *Skinner, ubi supra,* the demandant was permitted to show, upon the question of avoiding his deed, that he was of feeble understanding. There is, therefore, no good reason for making a general exception allowing a guardian to sue in his own name, to avoid the deed of his insane ward; and there is the grave objection that, the ward not being a party, the decree would not bind him, should he recover his reason, nor those who would succeed to his estate upon his death. *Gorham* v. *Gorham,* 3 Barb. Ch. 35.

In the present case, upon the allegations of the bill, the defendant perpetrated a gross fraud, by which she obtained a colorable title to all the property of an insane old man, and then led him immediately into marrying her. The marriage can only be declared void in proceedings instituted for that purpose in the lifetime of both parties (Pub. Sts. c. 145, § 9), although, if the allegations of the bill are true, there was no marriage. Pub. Sts. c. 145, § 5. The bill implies that proceedings to test the validity of the marriage have been instituted. But it may well be that, while there was such fraud or undue influence as would be sufficient to avoid the transfers of property, it would not be sufficient to avoid the marriage. As was said in *Foss* v. *Foss*, 12 Allen, 26, 28, the law regards the marriage contract as one which, "from its peculiar nature and on grounds of public policy," is "especially sacred and inviolable, and which cannot be avoided or set aside on the ground of fraud except on the most plenary and satisfactory proof of deceit and imposition touching matters which constitute the *essentialia* of the marriage relation." The rule with reference to property is not the same, and it is possible that, where one has been despoiled of his property by the fraud or undue influence of a woman, and a continuation of the same fraud or influence induces him to marry her, the rules of law may avoid the conveyances, but not the marriage. If a further continuation of the same fraud prevents him from moving to set the conveyances aside during his life, whether the widow would be estopped from claiming her usual rights is a question on which we intimate no opinion. However that may be, there must be some way in which the man in his lifetime may be restored to the possession of his own, without regard to what may become of the property after his death, and notwithstanding the fact that the marriage may not be void.

If it were true that marriage, *ipso facto*, condones fraud perpetrated by either of the contracting parties upon the other before the marriage, that doctrine would equally bar the remedy, whether pursued in the name of the ward or of the guardian. But there is no such doctrine. Transactions by which the property of a woman, while marriage is in contemplation, is put away in fraud of the settlement, are clearly remediable in

equity during the coverture. Marriage cannot have the effect of condoning a previous fraud, unless the husband has mental capacity to enable him, if unmarried, to make a valid condonation. Condonation cannot spring from a mind incapable of ratifying. Whether or not there has been condonation depends not upon the fact of the validity of the marriage, but upon whether there have been acts or words which would work condonation; and the effect of even an express ratification would be destroyed by showing unsoundness of mind or undue influence. Upon the allegations of the bill, the plaintiff's ward has been deprived of his whole property by a fraud which stands uncondoned, and from the effects of which it would be gross injustice to deny him practicable relief. If he cannot sue in his own name, it might be better to allow the guardian to maintain the present bill, than to deny the ward justice, although this remedy, as we have seen, would be incomplete.

The doctrine that husband and wife could not sue each other was founded upon the theory that they were one person in law, and is supported by weighty considerations. Our statute, which authorizes a married woman to sue and be sued in the same manner as if she were sole, expressly provides that the section which confers the authority shall not be construed to authorize suits between husband and wife. Pub. Sts. c. 147, § 7. This court has pointed out difficulties which may arise in such suits, (*Lord* v. *Parker*, 3 Allen, 127, 130,) and has in one case impliedly intimated an opinion that they may prevent a wife from maintaining any action whatever against her husband. *Bassett* v. *Bassett*, 112 Mass. 99. But there are cases in our reports in which a husband and wife have been adversary parties in suits in equity. *Ayer* v. *Ayer*, 16. Pick. 327. *Scott* v. *Rand*, 115 Mass. 104. It is thoroughly settled in England that the husband and wife may sue each other in equity, in cases concerning separate property. 1 Fonblanque's Eq. c. 2, § 6, note (p). Mitford, Ch. Pl. (6th Am. ed.) 29, note. Calvert on Parties, (2d ed.) 408, 416. 1 Dan. Ch. Pract. (5th ed.) 179. *Warner* v. *Warner*, 1 Dick. 90. *Brooks* v. *Brooks*, Finch, 24. *Ainslie* v. *Medlicott*, 13 Ves. 266. *Earl* v. *Ferris*, 19 Beav. 67. *Wake* v. *Parker*, 2 Keen, 59. *Davis* v. *Prout*, 7 Beav. 288. *Brooke* v. *Brooke*, 27 L. J. (Ch.) 639. And in consequence of the Married Women's Property Act, 1882

(45 & 46 Vict. c. 75), they may maintain actions at law against each other in respect of separate property. *Butler* v. *Butler*, 16 Q. B. D. 374, 378, and 14 Q. B. D. 831.

In New York and in Michigan bills in equity have been maintained by a wife against her husband, to set aside conveyances of her separate estate obtained after coverture by his fraud. *Fry* v. *Fry*, 7 Paige, 461. *Stiles* v. *Stiles*, 14 Mich. 72. The doctrine is sometimes stated in general words, that husband and wife may sue each other in equity. *Cannel* v. *Buckle*, 2 P. Wms. 243, 244. Story Eq. Pl. §§ 62, 63. 2 Story Eq. Jur. 699. The doctrine of the English authorities cited above does not go so far, and other authorities limit the right to cases in which questions concerning property arise between husband and wife. 1 Pomeroy, Eq. Jur. § 99. But the contention here is whether the property which the bill seeks to reclaim is the separate property of the defendant, or whether it is in fact the property of the husband, and ought to be restored to him. This is a question which, under the more limited view, may be tried in a suit in equity between the husband and wife. Without going farther, we think that, upon the facts alleged, the guardian may maintain a bill for relief in the name of his ward. If, therefore, he shall ask to amend by substituting the name of his ward as plaintiff, he is to be allowed so to do. Otherwise, the bill is to be dismissed, with costs.    *So ordered.*