# Staunton.

## PAXTON V. STUART & ALS.

### OCTOBER 8TH, 1885.

1. EQUITY JURISDICTION AND RELIEF—*Resulting trusts—Liens—Set-offs—Case at bar.*—From ancestor's estate there were shares going to I., to J., to P. and to P.'s ward. I. and P. jointly purchased land, and used all the shares in paying for it. Then, I. sold to P. her half of the land, and for part of the price took three bonds of P., with J. as surety, payable to I.'s husband, who assigned them for value to S. T. and B. In a creditor's suit to ascertain debts and liens against P.'s estate—

HELD:

    1. P.'s ward has a paramount lien on the entire land to the extent his share was used in paying for it.

    2. J. has an equal lien with P.'s ward, on the entire land to the extent his share was used in paying for it, *unless* the transaction between P. and J. as to this use of J.'s share, made P. individually the debtor therefor to J., and destroyed his lien.

    3. But if such lien remains in favor of J., he is entitled to set off the amount thereof *pro tanto*, against the bonds of P. and himself to I.'s husband, in whose hands soever they may be found.

2. PRACTICE IN CHANCERY—*Lunatic defendant.*—Pending a suit against a lunatic represented by his committee, the lunatic dies, the committee *ipso facto* becomes *functus officio* and the suit abates, and must be revived and proceed in the name of the lunatic's personal representative and heirs; and all proceedings had after lunatic's death and before such revival, are void.

Appeal from decree of the circuit court of Botetourt county, rendered October 29th, 1884, in a chancery cause wherein J. T. Paxton is complainant, and Wm. Stuart, J. W. Stuart, C.

B. Thomas, A. J. Stalnaker and Isabella, his wife, J. H. H. Figgat and als. are defendants.

Opinion states the case.

*B. Haden,* for the appellant.

*F. T. Glasgow,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

James Paxton died testate, and his will was admitted to probate in the county of Botetourt in 1866. His executors, on the 15th of November, 1866, sold one tract, "Five Forks," of the testator's real estate for $22,025, and the other tract, "Soldiers' Retreat," for $13,000. The purchasers of the last named tract were his son, P. M. Paxton, and his daughter, Isabella M. Paxton, afterwards Mrs. Stalnaker, who executed eighteen bonds for the purchase money, and received a conveyance, reserving a lien on the land to secure the purchase money represented by said bonds. They also purchased of the executors, personal property to the amount of $1691.47; and in this way they, on the 15th day of November, 1868, owed on these two accounts, to said executors, the sum of $16,378.33, of which $1712 was for the personalty.

It appears from a decree of the circuit court of Botetourt county, entered on the 28th day of October, 1868, in the suit of James Paxton's executor *against* James Paxton's heirs and others, that the share of Isabella M. Paxton in her father's estate amounted to $5418.92; the share of P. M. Paxton to $6008.34; the share of J. T. Paxton, the appellant, to $1938.05; and the share of J. Wm. Gilmore, a grandson and legatee of the testator, to $2966.86; which sums had been decreed to them respectively, as of the 15th day of November, 1868, in the said suit of Paxton's executor *against* Paxton's heirs and others; and by the decree in which the executor, Glasgow,

was authorized to assign and transfer to the legatees named, purchase-money bonds of Isabella and P. M. Paxton for the amounts, respectively, of their several legacies. The bonds were accordingly transferred, that is, by delivering to Isabella and P. M. Paxton, respectively, their bonds to the amount of their interests; and to J. T. Paxton, bonds of Isabella and P. M. Paxton, for the amount of said J. T. Paxton's interest; and by assigning to P. M. Paxton, guardian of J. Wm. Gilmore, bonds of said Isabella and P. M. Paxton, to the amount of said Gilmore's interest; and receipts were accordingly taken by Glasgow, executor; and thus the entire indebtedness of Isabella and P. M. Paxton, on account of the purchase money for " Soldiers' Retreat," and for the personalty bought by them, was paid and discharged as to said executor. J. Wm. Gilmore got satisfaction of his interest, as will hereinafter be shown. But, although the entire indebtedness to Glasgow, executor of James Paxton, was discharged as above stated, it does not appear by the record how, if in any way, the legacy of J. T. Paxton has been paid. It is, however, a fact, appearing by the record, that subsequently, and very soon after said settlement of November 15th, 1868, J. T. Paxton became the holder and owner of two bonds executed by P. M. Paxton to him, which together amount to said share of J. T. Paxton, *less the small sum of five cents.* What was the consideration of these bonds is not disclosed by the record. They bear date November 23d, 1868, only eight days after said settlement of November 15th, 1868. On these bonds of P. M. Paxton, J. T. Paxton recovered judgment, no resistance thereto being made by P. M. Paxton. Nor does the record show that at any time after the execution of these bonds by P. M. Paxton to him, was J. T. Paxton in possession of any of the bonds of Isabella and P. M. Paxton, transferred to him for the amount of his said legacy.

Subsequently, by their deed, dated January 21st, 1869, the said Isabella, who had intermarried with Albert G. Stalnaker, and her said husband, sold and conveyed to P. M. Paxton, her

undivided moiety of " Soldiers' Retreat," for the sum of $7500, payable as follows, to-wit: to W. A. Glasgow, surviving executor of James Paxton, $2770.24, which in the deed was declared to be the balance due from Stalnaker and wife on the joint purchase made by her before marriage, and P. M. Paxton from said executors, together with their interest therein, and the residue, to-wit: $4729.76, to said A. G. Stalnaker, that is, $1000 on or before the 1st day of January, 1869, and the balance in four equal payments of $932.44 each, payable respectively in one, two, three and four years, from the 1st day of January, 1869, with interest from that date, payable annually. It appears that the contract of sale was made in the fall of 1868. A lien is retained in the deed to secure the payment of the several sums of money therein specified. The balance thus made to appear to be due to Glasgow, executor, was evidently fixed by deducting from Mrs. Stalnaker's half of the indebtedness, to-wit: $8189.16, her share of the estate, $5418.92, which left exactly the $2770.24. It is obvious that this sum could not have been due said Glasgow, as executor, the entire indebtedness of Isabella and P. M. Paxton, in their joint purchase from the executors having been discharged as aforesaid by the transfer by Glasgow, surviving executor, of the bonds of Isabella and P. M. Paxton, for which a lien was reserved by the executors in the deed to them.

For the four deferred payments four bonds were executed by P. M. Paxton and J. T. Paxton, payable to A. G. Stalnaker. On three of these bonds judgments were afterwards obtained: on numbers two and three for the benefit of the appellees, Stuart and Thomas, and on number three for the benefit of W. J. Betterton, all of whom were assignees for value.

At February rules, 1873, Stuart and Thomas brought, in the circuit court of Botetourt county, a creditor's suit against P. M. Paxton and others. This cause was regularly matured and set for hearing. By proceedings therein the liens on the lands of P. M. Paxton were ascertained by report of a commissioner,

which report was confirmed; the report showing that the rents for five years would be insufficient to discharge said liens, interests and costs; and on the 15th day of May, 1873, a decree was entered directing a special commissioner to sell the lands of P. M. Paxton, to satisfy said liens. Before the sale was made, to-wit, in the year 1875, it appears that P. M. Paxton became deranged in mind.

At June rules, 1876, J. T. Paxton filed an original creditor's bill against P. M. Paxton's committee and others, in which he recites the proceedings just mentioned as having taken place in said suit of Stuart and Thomas; refers to the said bonds of P. M. Paxton and himself to Stalnaker, and to the judgments thereon, as being in large part unpaid, and as being valid liens on P. M. Paxton's land, and as being paramount to any other claims against said land, being for the purchase money thereof; sets up the fact that his brother, P. M. Paxton, had become a lunatic, and gives as a reason for filing his bill, that, in addition to the debts which were liens on the lands of P. M. Paxton, there were outstanding debts against him, and that he desired them all to be ascertained and settled. He also alleged, that in order to make a valid sale of P. M. Paxton's land, it was necessary that all the persons, who would be the heirs at law of P. M. Paxton, if he were dead, should be parties to the suit, and all such were made parties, as well as W. P. Burks, Jr., the committee of P. M. Paxton, and prayed that the two causes be consolidated, and the lands sold, if necessary to the settlement of P. M. Paxton's debts.

This cause was also regularly matured as to all the adult defendants, and a guardian *ad litem* assigned to the infant defendant, and his answer filed. On motion of J. T. Paxton the two causes were consolidated, and were again referred to a commissioner to ascertain and report the debts of P. M. Paxton, and their priorities, if any.

On the 25th day of October, 1876, J. Wm. Gilmore, who had attained his majority, filed his petition asserting his legacy

against the estate of his guardian, P. M. Paxton, and claiming priority of lien on "Soldiers' Retreat," over the debts of said P. M. Paxton, on the ground that neither the executor, Glasgow, nor the guardian, P. M. Paxton, had the power or the right to invalidate the claim of the petitioner upon the proceeds of the sale of his grandfather's real estate for the amount of his legacy, and the interest thereon, or to merge his legacy with the purchase of said land by P. M. and Isabella Paxton, so as to enable P. M. Paxton to use a fund held by him as guardian, to pay a debt due by him individually to the executor.

A report of liens was returned by the commissioner, and the report was confirmed without exceptions, on the 24th of April, 1877, and a sale of P. M. Paxton's land was decreed to satisfy the liens thereon. By the decree of that date, the report of the commissioner was in all respects confirmed, except as to the claim of J. Wm. Gilmore, as to which the decree held the same valid for the sum of $3521.16, as of May 1st, 1877, and secured by the vendor's lien retained by James Paxton's executors in their deed to P. M. and Isabella Paxton, which lien had not been destroyed, and that that claim, and the claim for $118.22 found by the report in favor of John J. Paxton, receiver, for the benefit of J. G. Mackey, of John L. Taylor, receiver, etc., Starkey Robinson, guardian, etc., and of C. M. Reynolds, receiver, etc., respectively, are *the first liens* on the said land, and to be paid out of the proceeds of the sale thereof, ratably.

The judgments on the bonds assigned to Stuart and Thomas and to Betterton were declared to be the second liens thereon, to be paid ratably: and the land was decreed to be sold. The special commissioners appointed to make the sale, reported that they had sold to J. Wm. Gilmore about 217 acres of "Soldiers' Retreat," at $18 per acre; to J. T. Paxton 229¼ acres, at $9 per acre; and to J. T. Paxton 21 acres, at $1 per acre.

Gilmore, after deducting the amount of his legacy, paid the balance of his purchase, which was but a small amount. J. T.

Paxton paid for the 21 acres purchased by him, and the titles were decreed to the purchasers respectively. But J. T. Paxton never complied with the terms of the sale of the portion of "Soldiers' Retreat" purchased by him. He did not make the cash payment, nor did he execute the required bonds for the deferred payments. A rule was issued against him on the 31st of October, 1881, to show cause why said land should not be resold at his risk. On the 31st of May, 1882, J. T. Paxton filed his answer to the rule, wherein he states several matters wholly irrelevant and not responsive to the rule, but among other things he says that so much of the bonds of Isabella and P. M. Paxton, which were executed to the executors of James Paxton for the purchase money of "Soldiers' Retreat," and delivered up to satisfy the shares of P. M. and Isabella Paxton, J. T. Paxton and J. Wm. Gilmore, as equal his share, to wit: $1938.05 and interest, was still due and unpaid to him, and was a first lien on said tract of land, and that he had done nothing to impair that lien, and that he was entitled to set-off the amount thereof *pro tanto*, against the judgments on the bonds of P. M. Paxton and himself, whether the same were in the hands of the obligee, Stalnaker, or his assignees.

A decree was rendered May 31, 1882, referring the cause to a commissioner to enquire, among other things, what amount of money was coming to J. T. Paxton from the estate of his father, James Paxton, and what part thereof had been paid, and by whom and how paid, and what liens exist on "Soldiers' Retreat," and also what payments, if any, J. T. Paxton had made on the 229¼ acres, part of "Soldiers' Retreat."

In his report of May 29th, 1883, the commissioner stated, that the amount decreed to be coming to J. T. Paxton from his father's estate was $2079.78, and that the executor, Glasgow, held his receipt in full therefor; that P. M. and Isabella Paxton had paid for "Soldiers' Retreat," as before stated in this opinion; and that he was advised of no other liens on said tract than those already reported. Depositions were taken and

filed in the cause May 29th, 1883, but are mostly on matters outside of the points on which the decision of this case must turn,—except that it appears therefrom that P. M. Paxton was dead at the time the decree of the 24th of April, 1877, for the sale of his land, was entered. The fact that he was then dead is mentioned in J. T. Paxton's answer to the rule which was filed in May, 1882. Yet, strange to say, the fact of his death is not referred to in any decree in this cause, and no amended bill was filed or step taken to bring his personal representative and heirs before the court, his estate being represented only by his committee, who by law became *functus officio* by the death of the lunatic.

On the 27th day of October, 1883, the circuit court again referred the cause to a master, to state an account showing the amount Isabella Stalnaker had paid on the purchase of "Soldiers' Retreat," with other matters pertinent. The master's report was filed May 23, 1884. It shows only what has already been set forth, to wit: that she conveyed her half, $8,189.16, of the indebtedness of herself and P. M. Paxton to James Paxton's estate by receiving her share thereof, $5418.92, and securing the balance, $2770.24, by lien in favor of Glasgow, executor, on her moiety of "Soldiers' Retreat," reserved in the deed of herself and husband to P. M. Paxton; and that P. M. Paxton arranged his half of said indebtedness with the shares of himself, J. T. Paxton, and J. Wm. Gilmore, and by paying the balance of $106.15. As pertinent to the enquiry the master states, "that as P. M. Paxton took satisfaction of J. Wm. Gilmore's legacy by the transfer of his own and his sister's bonds, he took the same as a subsisting lien on the land, which the court has heretofore enforced by its decree; and that the same lien existed as to J. T. Paxton, if he took assignment or transfer of bonds on P. M. and Isabella Paxton. But if J. T. Paxton merely negotiated a loan to them of his share of his father's estate, that transaction changes the nature of his claim." J. T. Paxton excepted to this report. By its decree

of October 29th, 1884, which is the decree appealed from, the circuit court overruled the exceptions and confirmed the report, and adjudged that, it appearing to the court that J. T. Paxton had a lien upon the lands of P. M. Paxton for the amount of his legacy from James Paxton, deceased, yet he can not claim the same as against Isabella Stalnaker or her assigns on the bonds for the sale of her half of said land, sold by her to P. M. Paxton, for which J. T. Paxton became the surety; and it further appearing to the court that the said suits were properly heard together, and that J. T. Paxton was a party thereto, and that by his petition he has had all his rights adjudicated, it is therefore adjudged, ordered and decreed, that "certain special commissioners sell the tract of 229¼ acres of land heretofore sold to J. T. Paxton," &c.

We are clearly of opinion that the decree appealed from, and all the decrees entered in these causes since the death of P. M. Paxton, are erroneous and must be reversed, because at the time they were entered P. M. Paxton's estate was not properly represented before the court.

We are also of opinion, that so far as the decree of April 24th, 1877, adjudges that J. Wm. Gilmore had a first lien on "Soldiers' Retreat," to the amount of his legacy and interest, $3521.16, that decree is right, but that the same is erroneous in so far as it adjudges the claims which were reported in favor of John J. Paxton for J. G. Mackey, of John L. Taylor, receiver, of Starkie Robinson, guardian, &c., and of C. M. Reynolds, receiver, &c., to be also first liens on "Soldiers' Retreat." James Paxton's executors sold that tract for $13,000, to P. M. and Isabella Paxton, and retained a lien for the purchase money. The surviving executor, Glasgow, accepted their shares of the testator's estate, and the shares of J. T. Paxton and J. Wm. Gilmore, and the $106.16, in satisfaction of the lien, and in effect released it. But in this transaction the interest of J. Wm. Gilmore, the ward of P. M. Paxton, was used by the

.guardian in extinguishing his individual liability; and it is plain that the lien in favor of Gilmore, the ward of P. M. Paxton, was not thereby released, but remained in favor of said ward for his share so used. And unless, by transactions between P. M. Paxton and J. T. Paxton, the lien which the latter originally had on "Soldiers' Retreat" for his share, was extinguished, and took the form of a mere debt of P. M. Paxton to J. T. Paxton, and was represented by the two bonds of P. M. to J. T. Paxton, aggregating $1938, or some other form, it is equally clear that J. T. Paxton is also still entitled to a first lien on that land, equally and ratably with the lien of J. Wm. Gilmore. That decree, however, does not recognize any such lien in favor of J. T. Paxton. If the circuit court considered that that lien had not been extinguished, it erred in not including it with J. Wm. Gilmore's lien as jointly constituting the first liens on said land. But if the circuit court considered that J. T. Paxton's lien had been extinguished, then this court is of opinion that the circuit court erred in so considering, because the record is not sufficiently clear on that question of fact, and the circuit court should have definitely ascertained the truth in that respect before entering its decree.

It is true, that in its decree of October 29th, 1884, the circuit court seems to recognize that such lien still subsists in favor of J. T. Paxton. The language, however, is in the past tense, and is consistent with the idea that J. T. Paxton had released the lien which he originally had on said land.

If the circuit court actually meant to decide that though J. T. Paxton still had a claim for the amount of his share in his father's estate, on the land for half of which the bonds of P. M. Paxton and himself had been executed to Stalnaker, yet that J. T. Paxton could not set off the amount of his said lien against said bonds in whose hands soever they might be, then in that respect the decree appealed from is erroneous. It is true, that by the way in which the master states the mode in

which the purchase money was paid for "Soldiers' Retreat," it appears that it was not Mrs. Stalnaker who used J. T. Paxton's share to pay that purchase money, but that it was P. M. Paxton who so used it; yet he used it to take up the joint bonds of himself and of Isabella Paxton, which bonds were liens on the land. Therefore she, as well as P. M. Paxton, was bound to J. T. Paxton for the amount so used, and he has a lien on the whole tract as well as a claim on her and him for the said amount, *unless* J. T. Paxton released his lien, and changed the form of his claim for the amount of his said share into a mere personal claim on P. M. Paxton, and as to this, there is need of further enquiry before the rights of the parties can be properly adjudicated.

Therefore, the decree appealed from must be reversed and annulled, and the cause remanded to the circuit court with instructions to so amend the pleadings as to bring before the court the personal representative and heirs at law of P. M. Paxton, deceased, and to take steps to ascertain either by reference to a master, or by an issue out of chancery, whether or not J. T. Paxton assigned, or in any way parted with his said share of his father's estate to P. M. Paxton, so as to extinguish his lien on "Soldiers' Retreat" and convert it into a mere personal claim against P. M. Paxton. And if the circuit court shall ascertain that J. T. Paxton did not so extinguish his lien, then it shall allow the amount of the said lien to go as a set-off against the judgments on the said bonds of P. M. and J. T. Paxton.

And it appearing that J. T. Paxton placed in the hands of J. H. H. Figgat, who was attorney for the assignees of the said bonds, certain claims on Bell, Echols and Catlet, the proceeds whereof were to be applied to the said bonds, the circuit court is directed to ascertain what amount thereof has been realized and is applicable to the said bonds, and to cause the same to be applied thereto.

For these reasons the said decree is reversed, with costs to

the appellant, and the cause is remanded to said circuit court for further proceedings therein, in accordance with the views set forth in this opinion.

DECREE REVERSED.