FIRST NATIONAL BANK OF NORTHAMPTON *vs.* JOSEPHUS
CRAFTS, assignee.

SAME *vs.* HAMPSHIRE COUNTY NATIONAL BANK & another.

Hampshire.    Sept. 29, 1887. — Jan. 4, 1888.    MORTON, C. J., C. ALLEN
& HOLMES, JJ., absent.

If an assignee in insolvency sells, by leave of the Court of Insolvency, the estate
of the insolvent, and, acting through a third person, becomes the purchaser, and
manages the estate for his own benefit and for the benefit of other persons, this
court will not entertain a bill in equity, brought by a creditor of the estate
against the assignee, under the Pub. Sts. c. 157, § 15, to revise an order of the
Court of Insolvency dismissing a petition of the creditor seeking to compel the
assignee to account for the profits made by him after the sale, unless the per-
sons interested with the assignee in the purchase are made parties.

If a creditor of an insolvent estate proves a valid claim against it, the fact that he
subsequently participates with the assignee of the estate in a transaction preju-
dicial to the rights of the creditors affords no ground for expunging his claim,
under the Pub. Sts. c. 157, § 35.

DEVENS, J.    These cases are two bills in equity, seeking the
supervisory intervention of this court over the Court of Insol-
vency, and are in the nature of appeals from its decisions.    Pub.
Sts. c. 157, § 15.

In the first case, the plaintiff seeks that the account of the
assignee of the insolvent estate of N. Day and Brothers should
be surcharged, and that he be denied any compensation as as-
signee, on the ground that he has wrongfully withheld from the
general creditors large sums of money belonging to the insolvent
estate, and has unlawfully gained and secured them for his own
benefit, and for that of the Hampshire County National Bank.

In the second case, the plaintiff seeks that this court shall
order that the proof of the claim of the Hampshire County Na-
tional Bank as a creditor of N. Day and Brothers, heretofore
made, shall be expunged.

Without undertaking to state the facts in their complete de-
tails, they may be summarized from the allegations of the plead-
ings and the report of the master sufficiently for the immediate
purpose of the present inquiry.    N. Day and Brothers became
embarrassed in the summer of 1884, and were largely and nearly

equally indebted to the plaintiff and to the Hampshire County National Bank on promissory notes regularly discounted. Before proceedings in insolvency were begun, these banks conferred as to making further advances, determined that it was unwise to do so, and the insolvency of N. Day and Brothers followed. Crafts was a director of the Hampshire Bank, was present at this conference, and was subsequently chosen assignee, on August 30, 1884. On October 20, 1884, Crafts, as assignee, filed his petition for leave to sell all the property of the insolvents for the sum of $41,500, at private sale, except certain pieces of real estate mortgaged for more than their value. The price offered for that which was proposed to be sold slightly exceeded its appraised value. This petition was supported by fifteen of the creditors, including the Hampshire Bank, and was opposed by the plaintiff, but on November 15 was granted. It was represented to the court that this offer was made by Charles Day and William C. Hall. Charles Day was a brother of the insolvents, was tenant in common of several pieces of real estate used by them in their business, but was not a partner or otherwise interested therein. Before this leave was granted, he also relinquished any claim against the insolvents, if any he had, for the use made by them of his share of the real estate.

On November 10, 1884, Charles Day had a conference with Luther Bodman, the president of the defendant bank, relative to a loan of $27,000 or $28,000, to enable him to purchase the property which the assignee had petitioned for leave to sell. It was finally arranged that the Hampshire Bank should lend $27,000 or $28,000, and that the property should be conveyed to a trustee to be used to repay this loan, and for other purposes, which appear in a declaration of trust which was made on November 15, the day when leave to sell was granted. It was also then arranged that Crafts should be the trustee. On November 15, 1884, Crafts, as assignee, acting under the authority given by the Court of Insolvency, conveyed to Charles Day and Hall all of the property, real and personal, except the five lots heretofore mentioned, and said Day and Hall reconveyed the same to Crafts, for the purposes set forth in the declaration of trust. This declaration recited the conveyance to Crafts of all the real and personal estate of the insolvents, and also a conveyance of all the interest of Charles

Day in their real estate, and also that Charles Day had given
to Crafts, as trustee, his negotiable note for the sum of $5000,
and that Crafts had given his note to the Hampshire Bank for
$27,000, lent to him in order to carry out the trust. The declara-
tion further stated, as the purpose of the trust, that Crafts should
have power to manage all the estate, and carry on the business
for the best interest of those concerned, should sell or convey the
same, and should devote the proceeds, first, to the payment of
the sum of $27,000 borrowed from the bank, provided that the
note of $5000, given to him by Charles Day, should not be col-
lected, except so far as Crafts might fail to realize, from the
property conveyed, what was necessary in order to pay the
loan made to him from the Hampshire Bank. Secondly, Crafts
was to pay to the Hampshire Bank seventy-five per cent of the
debt due to it from the insolvents, and proved by it, deducting
therefrom the amount of any dividends which it might receive in
the insolvency proceedings. Thirdly, if any property remained,
it was to be transferred or paid to Charles Day. Charles Day
gave to Crafts his note for $5000, and a quitclaim deed of his
undivided interest in the lots he had owned in common with
his brothers.

Crafts entered upon the management of this estate, and has
carried on the business of farming, brickmaking, and manufactur-
ing lumber, making the necessary disbursements therefor. He
has sold certain parts of the property, and has paid to the Hamp-
shire Bank a portion of the sum borrowed from it. He is alleged
to have conducted the business successfully; so that, estimating
the value of the property now in his hands, and charging him
with what he has received, and the fair value of the property
when he received it, it is alleged that he has made a profit in
the transaction, for which the plaintiff contends that he should
now account as assignee.

The bill, in substance, seeks to set aside the whole transaction
by which Crafts became trustee, and to appropriate to the ben-
efit of the general creditors all the property which passed to him
by the sale made to him, together with the profits thereon. He
certainly is not bound to account for this property as assignee,
nor for any profits arising from the transaction by which the
property passed into his hands as trustee, unless the transaction

itself was fraudulent and voidable by the general creditors. This cannot be investigated between himself and the creditors alone, but those must be made parties whose interests are directly concerned. The interest of Charles Day in this matter is direct. He does not appear to have been made a party to the original proceeding in the Court of Insolvency, on which the bill is founded, in which it was sought to charge Crafts on account of the receipt of moneys and other property, or of profits made thereon, which, as alleged, ought properly to belong to the estate; nor has he been made a party to the bill in this case.

All parties interested in the object of a suit should, as a general rule, be made parties thereto. Story Eq. Pl. § 72. Calvert on Parties, *c.* 1, § 1. In suits concerning trust property the *cestuis que trust* are necessary parties. This is especially so where the inquiry as to the rights of the trustee involves the necessity of investigating the relations between him and the *cestuis que trust.* *Boyden* v. *Partridge,* 2 Gray, 190. While the object of the court is to do justice to all parties interested in the subject matter of a suit, if complete justice can be done to those immediately before the court, other parties may, in its discretion, be dispensed with. *Jewett* v. *Tucker,* 139 Mass. 566. But where it is seen at the final hearing that justice cannot be done on account of a want of parties whose interests are involved in the controversy, this objection may then be made, or the court may of its own motion decline to proceed to a final decree, and may dismiss the bill. *Sears* v. *Hardy,* 120 Mass. 524.

The position in which Crafts stands in reference to the insolvent estate cannot be determined without passing upon the relation which he occupies to Charles Day, and upon the rights of Day if he has a direct interest in the transaction sought to be inquired into, and, practically, set aside. In such case, for the protection both of Crafts and of Day himself, and for a full investigation, it is necessary that Day should be made a party. That Day has such an interest by virtue of the declaration of trust, and the acts which were done in connection with it, is apparent. He was one of the purchasers under the sale made by order of the Court of Insolvency, subsequently transferring his purchase to Crafts as trustee. When the order was made, he relinquished a claim, whether real or pretended we are not

now called on to decide, which he had against the insolvent estate. He transferred to Crafts his interest as tenant in common with the insolvents in certain portions of the real estate, and Crafts has since managed it with the other real estate formerly of the insolvents. Day also became responsible in the sum of $5000 for the payment of the loan agreed to be made to Crafts, and which was in fact afterwards made to him, to enable him to carry out the purposes of the trust, which loan has been only partially paid. He is finally entitled, under the declaration of trust, to receive whatever shall remain after Crafts has paid all expenses, and otherwise completed the execution of his trust.

It would be premature now to discuss whether a bill can be brought, founded upon the interlocutory order of the Court of Insolvency, — whether the investigation of such a transaction as the bill describes should be made upon a bill framed upon the supervisory power of this court in insolvency proceedings, — or whether an original bill should be brought to set aside the transaction, to which all interested should be made parties. The discussion of these, as well as of numerous other important questions, suggested by the pleadings and the master's report, must be postponed until Charles Day is made a party to the proceedings.

Similar considerations, which it is unnecessary to state in detail, apply to the Hampshire Bank, which has not been made a party defendant.

The plaintiff may move before a single justice to make Charles Day and the Hampshire Bank parties defendant, and to make such other amendments to his bill, if any, as he shall be advised will bring the inquiry he desires to present properly before the court, which motion may be then considered. If such motion is not made within a reasonable time, the bill must be dismissed.

*Ordered accordingly.*

The bill in the second case involves a different subject of inquiry. We assume, in considering this case, in favor of the plaintiff's contention, without in any way intending so to decide, that the transaction by which the property of the insolvent estate was sold, and finally passed into the hands of Crafts in trust, the defendant bank advancing to him the sum of $27,000 for the

purpose of carrying out the objects of his declaration of trust, was one which was fraudulent in law, and which, by proper proceedings, through the assignee or otherwise, might be avoided by the creditors, and the property conveyed, and any profits made in the sale or management of the same, appropriated to the benefit of the creditors. If this be so, the plaintiff contends that an order should now be made that the proof of the claim of the defendant bank should be expunged. It has made application to the Court of Insolvency by petition to that effect, which petition has been refused, and it is upon this refusal that the bill before us, invoking the supervisory power of this court, is founded.

Having sought to obtain an advantage over other creditors in the payment of its claim, and to prevent an equal division of the property of the insolvents by the conveyance thereof to Crafts through Day and Hall, upon the trust heretofore stated, the plaintiff urges that the claim "proved by said Hampshire Bank ought to be expunged, for that it is founded in fraud and illegality." But the case shows that the claim proved by the Hampshire Bank was honestly due, nor is there any evidence that it had received any conveyance by way of preference or security, or that the claim was in any way diminished by any payment. Under certain circumstances, the Court of Insolvency has power to expunge a claim, or may alter it, as where "the evidence shows that it is founded in whole or in part in fraud, illegality, or mistake." Pub. Sts. *c.* 157, § 35. If the defendant bank has participated in a transaction prejudicial to the rights of creditors, and in fraud of the insolvent law, of such a character that it may be avoided by them, or may afford ground for an action in which a remedy may be sought in damages commensurate with the wrong inflicted, it is a transaction subsequent to the proof of its claim, and having no connection with such proof. The original claim is not the less valid. It is not founded in fraud or illegality because the bank may have subsequently done something which is justly the subject of animadversion, which may expose it to a demand for damages, or which may cause property which has been transferred for its benefit to be reclaimed. It would be to inflict a punishment purely arbitrary to expunge a claim in itself entirely honest and

correct, on any such ground. We can find no warrant for doing so on any general legal principle, or by virtue of any provision of the statute.                    *Bill dismissed.*

*W. S. B. Hopkins*, for the plaintiff.

*D. W. Bond & G. Wells*, for the defendants.