THOMAS W. RICHMOND *vs.* ADAMS NATIONAL BANK
& others.

Berkshire.    September 9, 1890. — October 25, 1890.

Present : FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Guardian of Insane Person — Rescission of Ward's Agreement — Equity.*

A testator's heirs, including a married daughter, being dissatisfied with his will, which was never probated, signed an agreement for the distribution of the estate. Shares of stock in two corporations put in trust for the benefit of such daughter and her husband during life were, after their death, to go to her children, if any; otherwise, to the testator's grandchildren. Subsequently, she was put under guardianship as an insane person, and after her husband's death her guardian brought a bill in equity against the trustee and the corporations to recover the property and annul the trust, on the ground that she was insane when she signed the agreement. She died pending the bill, and neither her administrator nor such children or grandchildren were made parties defendant. *Held,* that the guardian had no title to the property such as enabled him further to prosecute the bill; and that the bill must be dismissed.

FIELD, C. J.    This is a suit in equity brought in the Superior Court by Thomas W. Richmond as guardian of Mary C. Stearns, an insane person, against the Adams National Bank, the Boston and Albany Railroad Company, and Parker H. Bosworth and Nathaniel J. Bosworth, both of Pittstown, Rensselaer County, in the State of New York.    The plaintiff and his ward were both domiciled within the county of Berkshire in this Commonwealth, and the plaintiff was appointed guardian by the Probate Court of that county.    The bank had, and has, its principal place of business within said county, and the railroad company is a corporation chartered by the Commonwealth.    Both the bank and the railroad company demurred to the bill, and the demurrers were overruled by the Superior Court, and they appealed.    It does not appear that after the demurrers were overruled either the bank or the railroad company answered the bill, or that the bill was taken for confessed against either of them. The Bosworths appeared and filed a joint answer, in which they say that the court " has no jurisdiction concerning the subject matters complained of, there being no authority conferred upon it by law to take cognizance thereof, and it hath no power to

make orders or decrees therein"; and, without waiving this objection to the jurisdiction, they set out their defence.    In this state of the pleadings, Shubael W. Brayton, of North Adams in said county, filed a petition representing that since the commencement of the suit Mary C. Stearns had died intestate, and that he had been duly appointed administrator of her estate, and he prayed to be admitted as such administrator to prosecute the suit.    No action whatever appears to have been taken by the Superior Court on this petition.    The Bosworths afterwards obtained leave to amend their answer by adding the following clause, viz. : "This suit cannot be prosecuted by this plaintiff in his own name, and the plaintiff hath no right in law or equity as guardian in his own name to commence or prosecute this suit."    They also suggested the death of Mary C. Stearns. The plaintiff, having obtained leave to file a special replication, filed only a general replication, and then the cause was sent to a master.

The Superior Court, before sending the cause to a master, should have required the bank and the railroad company to file answers, or should have taken the bill for confessed against them, and should also have disposed of the petition of Brayton. We have not, however, deemed it necessary to consider how far these omissions would render the subsequent proceedings ineffectual, if the plaintiff had shown any right to maintain the suit against any of the defendants.

Upon the coming in of the master's report, the cause was reserved by a justice of the Superior Court for this court, on the pleadings and report, "saving to defendants all benefits of appeal on demurrer."    It appears by the master's report, that Mary C. Stearns was adjudged an insane person, and Daniel Stearns was appointed her guardian by the Probate Court of the county of Berkshire in February, 1866, and that he resigned as guardian in 1884, when his resignation was accepted by that court, and the plaintiff appointed guardian in his place.    Mrs. Stearns was the daughter of Nathaniel Bosworth of Pittstown, New York, who died on April 6, 1853, leaving a will.    She resided with Henry Stearns, her husband, in Pittsfield, Massachusetts, from her marriage in May, 1830, until his death in March, 1884. After his death she continued to reside within this Common-

wealth until her death, on January 14, 1887. The heirs of Nathaniel Bosworth were dissatisfied with his will, and, so far as appears, it was not presented for probate anywhere, and there is no record of any action or proceeding concerning the will in the Surrogate's Court of Rensselaer County, New York. In September, 1853, Alfred Bosworth, one of the heirs of Nathaniel Bosworth, was appointed by the surrogate of that county administrator of the estate of Nathaniel Bosworth, and he proceeded to administer the estate as an intestate estate and his final account after due notice has been allowed in that court. In that account he asked to be allowed for certain sums distributed to the heirs, among which is the following, viz.: "To Mason Bosworth, trustee for Mary C. Stearns, Pittsfield, $8,964.00." This distribution was in accordance with an agreement made on June 17, 1853, by the heirs of Nathaniel Bosworth. The agreement was signed by all the heirs, including Mary C. Stearns, and was also signed by her husband, and it provided for the distribution among the heirs of all the property real and personal of Nathaniel Bosworth, in case his will should not be admitted to probate. In the clauses of this agreement in which portions of the property are assigned to each heir by the others, the provision is, " Such assignment, sale, and transfer to take effect only in case the said surrogate shall decide against the proof or validity of said will, and such decision shall not be reversed." By this agreement, Mason Bosworth, as trustee, was to receive twenty-four shares of stock in the Western Railroad Company, and sixty-five shares of stock in the North Adams Bank, and four dollars in cash, " amounting in the whole to $8,904," upon trust to receive the interest and income of said stock and cash, and to apply the same " to the support and maintenance of said Mary C. Stearns during her life, and to pay annually so much of said interest and income as shall be left after providing for the support and maintenance of said Mary C. Stearns to said Henry Stearns during his life." If the income should not be sufficient for both, then the trustee, in his discretion, might apply to these uses " so much of the principal of the trust funds as shall be necessary." The agreement then provides that, " in case of the death of said Mary C. Stearns, leaving children, said trust fund, or so much thereof as shall remain in trust, is to be transferred and paid to

her children; but in case she shall die not leaving children, said trust fund, or so much thereof as shall remain in trust, is to be transferred and paid to the grandchildren of said Nathaniel Bosworth, deceased, share and share alike. And in case any of said grandchildren shall be dead, then the share of such deceased grandchild shall be paid to the children of any such deceased grandchild; and in case of the decease of any such grandchild not leaving children, the share of such deceased grandchild is to be divided among the surviving grandchildren; such transfer and payment of the principal of the said trust fund is not to be made until the decease of the said Henry Stearns." The master has found that " the property distributed by the agreement . . . to her trustee for the use of Mrs. Stearns was the same property in kind and amount as was devised " to her by the will of Nathaniel Bosworth. It does not appear that in amount it is precisely the same as she would have received as heir and distributee of his estate if he had died intestate. Mason Bosworth accepted this trust, and the shares of stock mentioned were transferred to him, as trustee, by the administrator, and while the stock was in his hands the shares became, by changes in the organization of the corporations, and by stock dividends, seventy shares of the stock of the Adams National Bank and twenty-seven shares of the stock of the Boston and Albany Railroad Company. There was a provision in the agreement between the heirs of Nathaniel Bosworth, that, in case of the death or removal of Mason Bosworth, trustee, from that office, Henry Stearns might appoint one of the brothers of Mason Bosworth as his successor in the trust. Mason Bosworth, in September, 1882, resigned his trust on account of old age. No one of his brothers would accept the trust, and most of the heirs entered into an agreement that he might resign as trustee, and that the Bosworths who are defendants should be appointed trustees in his place, and that he should transfer the trust property to them. This agreement was signed by Henry Stearns, but not by Mary C. Stearns. Mason Bosworth thereupon filed a petition in the Supreme Court of the State of New York holden for Rensselaer County, asking that he might be discharged from said trust, and that the Bosworths who are defendants might be appointed his successors, and a decree was entered in said court accepting his resignation

and appointing them trustees; and the trust property was conveyed to them, and they now hold it. The master finds that, at the time the agreement by the heirs was "executed, in June, 1853, Mary C. Stearns was insane, and not mentally capable of transacting or understanding business; that she had then been in this condition of mind for several years before the date of said agreement, and so continued until her death, in 1887."

The principal object of the bill is to have the agreement made by the heirs of Nathaniel Bosworth declared void, so far as it creates a trust for Mary C. Stearns, because she was insane when she signed it, and to obtain a decree that the defendants Bosworth shall transfer the shares of stock standing in their names as trustees to the plaintiff as guardian, because, as the plaintiff contends, it is personal property within the Commonwealth, which absolutely belongs to his ward. The plaintiff also asks that the two defendant corporations be enjoined from paying to the Bosworths, as trustees, any dividends on said shares of stock, and that such dividends shall be paid to him as guardian.

It is obvious that the case suggests many interesting and difficult questions. By the agreement of June 17, 1853, the heirs, who, we infer, were also the distributees of the estate of Nathaniel Bosworth, assigned to each other certain portions of his estate, and if the purpose were wholly to avoid this agreement, so far as Mary C. Stearns is concerned, the persons who signed it should have been made parties. The bill, however, does not seek wholly to avoid the agreement as to her, for it accepts the share of the estate assigned for her, but seeks to avoid the trust, and to have the property assigned in trust declared to be absolutely her property. If the intention were to have the estate of Nathaniel Bosworth readministered, that must be done in New York, although ancillary administration, if necessary, might be granted here. If it be assumed that after this lapse of time the administration of his estate as in fact it was administered cannot be or need not be disturbed, that this is not a testamentary trust, and that Mrs. Stearns by her guardian could have accepted the share assigned for her, but could have avoided the trust, it is plain that since her death, her husband having previously died, the only persons really interested in the question are the

administrator of her estate, and her children, if she left children, or, if she left no children, then the grandchildren of Nathaniel Bosworth and their children. The trust by its terms has terminated, and the only duty of the trustees is to settle their accounts and distribute the property among the persons entitled to it; and if the trust was invalid, they must account for the property to the persons entitled to it. No one of these persons is now a party to this suit.

It has been contended in argument, that by the law of the State of New York the share of Mrs. Stearns in the personal estate of her father, whether it be regarded as a legacy or as a distributive share, was a chose in action, which her husband could reduce to possession and make his property; and that by his execution of the agreement of June 17, 1853, he did reduce this property into his possession, and therefore a valid assignment of it was made by him to a trustee, even if his wife were insane at the time. The representatives of his estate, however, have not been made parties to the suit.

The authority of a guardian ceases upon the death of his ward, and his only duty then is to settle his accounts, and turn over the property of the ward which is in his hands to the persons entitled to.it. The title to the ward's property does not vest in the guardian by virtue of his appointment, and the general rule is that a guardian must bring suit in the name of his ward when the suit concerns the title of the ward to property. See *Hicks* v. *Chapman,* 10 Allen, 463; *Jennings* v. *Collins,* 99 Mass. 29.

It is said, however, that there is an exception to this general rule when a bill is filed by a guardian to set aside an act done by an insane person who has been put under guardianship. See *Gorham* v. *Gorham,* 3 Barb. Ch. 24; *Warfield* v. *Fisk,* 136 Mass. 219; 1 Dan. Ch. Pract. (5th Am. ed.) 9, 82, *et seq.*; Story, Eq. Pl. §§ 64, 65. We do not consider it necessary to determine how far, if at all, this rule prevails in this Commonwealth, or whether, if it prevails here, it is altogether applicable to this suit. We assume that it was within the power of the Superior Court to permit an amendment of the bill admitting the ward as a party plaintiff, and that, the ward having died, the administrator of her estate could have been admitted to prosecute

it.  If it be assumed that the Superior Court had jurisdiction of the subject matter, and that this court could determine the case on this reservation, and order a decree entered in the Superior Court on an amendment being allowed in that court admitting the administrator, still the difficulty remains that the persons beneficially interested in the establishment of the trust have never been made parties to the suit and have never been heard.  See *Sears* v. *Hardy*, 120 Mass. 524; *Cassidy* v. *Shimmin*, 122 Mass. 406; *First National Bank of Northampton* v. *Crafts*, 145 Mass. 444.

As none of the existing parties have any beneficial interest in the subject matter of the suit, and as the plaintiff has no title to the property of Mrs. Stearns, we are of opinion that the bill should be dismissed.                               *So ordered.*

*A. Potter*, for the plaintiff.
*A. J. Waterman*, for the defendants.