SUTTER, GUARDIAN, *v.* RIPPE.

4-7287                                    178 S. W. 2d 1008

Opinion delivered April 3, 1944.

Louis Shifrin, H. L. Ponder and H. L. Ponder, Jr., for appellant.

Harrell Simpson and W. J. Schoonover, for appellee.

GRIFFIN SMITH, Chief Justice. Mary Welday, sixty-one years of age, and William Rippe, twelve years older, were, prima facie, married at Pocahontas May 22, 1943.

In 1941 the Probate Court for St. Louis County, Missouri, made a finding that Rippe was so far disordered in mind as to endanger his person, and the person and property of others. It was directed that he be apprehended and confined in the St. Louis County Hospital subject to further orders of the Court. In a later adjudication of insanity, Orval C. Sutter, Public Administrator, was appointed guardian of Rippe's person and estate. Shortly thereafter the guardian was directed to place his ward in The Shaver Memorial Home,[1] where he remained from December 18, 1941, until May 21, 1943.

In a Chancery suit at Pocahontas, Sutter alleged that Rippe was abducted from the Home and brought to Randolph County by Mary Welday, where a marriage ceremony was performed at a time when Rippe was incapable of understanding what was being done.

When the Missouri Probate Court was informed of what had taken place, Sutter, as guardian, was directed to take possession of Rippe "wherever he may be found." Suit for annulment followed. Rippe was named as a party plaintiff.

In preliminary hearings it was admitted by appellee that she had been married twelve times—four times to one man, other than Rippe. Appellant's contention is that she is a matrimonial adventuress who "shops around" for more than solvent husbands and attaches herself for profit. It is alleged that Rippe was worth more than $50,000. Records indicate the estimate is conservative.

---

[1] The institution is also called Halls Ferry Memorial Sanitarium.

The Court made an order that Rippe pay $500 as an attorney's fee, $450 as suit money and expenses of procuring expert testimony, and $100 per month for the maintenance of appellee. The guardian was directed to make application to the Missouri court for authority to pay the sums awarded. The right of Sutter to proceed further was conditioned upon compliance with the order.

Since perfection of Sutter's appeal, death of his ward has been suggested and admitted. The question is, Has the guardian a right to have the issue determined?

Section 1252 of Pope's Digest provides that in all cases where suit may be instituted, and either plaintiff or defendant may die pending the same, it shall be lawful for the court before which such suit may be pending, on motion of any interested party, to appoint a special administrator, in whose name the cause may be revived, and said suit or suits shall progress, in all respects, in his name with like effect as if the plaintiff or defendant (as the case may be) had remained in full life.

This statute has been held applicable to the Supreme Court. *Anglin* v. *Cravens,* 76 Ark. 122, 88 S. W. 833.

There are opinions to the effect that, in the absence of a statute, death of a lunatic "represented by his committee" abates when death occurs *pendente lite,* ". . . as the committee thereby becomes *functus officio.*" Such a suit, it is said, may be revived and proceeded with in the name of the lunatic's personal representative or heirs, but any proceedings had after his death before revival are void. See *Paxton* v. *Stuart,* 80 Va. 873; *Richmond* v. *Adams National Bank,* 152 Mass. 359, 25 N. E. 731.

In *Straight* v. *Ice,* 56 W. Va. 60, 48 S. E. 837, the holding was that a suit in the name of a committee of an insane person to recover a debt may be revived in the name of the administrator of the insane person, on his death.

The holding in *Strickland* v. *Strickland,* 80 Ark. 451, 97 S. W. 659, was that while death terminates a divorce

suit, yet where property rights depend upon the correctness of a divorce decree, and an appeal has been taken from it, it is the duty of the appellate court to review the decree in order to settle the property rights. Compare *Johnson* v. *Bates,* 82 Ark. 284, 101 S. W. 412.

While in the case at bar property rights are indirectly affected, the trial court did not decree divorce.

Since no motion to revive has been filed, we do not decide whether a guardian's suit to avoid the marriage of his ward can be revived; nor do we pass upon any of the other issues presented. Our conclusion is that the suit, in its present form, should abate. It is so ordered.